**James D. BILKA, Appellant**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 14, 2014.

Decided May 28, 2014.

Carl A. Parise, Pittsburgh, for appellant.

Terrance M. Edwards, Assistant Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, President Judge, and LEAVITT, Judge, and COLINS, Senior Judge.

OPINION BY Senior Judge COLINS.

James D. Bilka (Licensee) appeals from an order of the Court of Common Pleas of Butler County (trial court) denying his appeal from an eighteen-month suspension of his driving privilege for refusing to submit to chemical testing after his arrest for violating Section 3802 of the Vehicle Code, 75 Pa.C.S. § 3802 (relating to driving under the influence of alcohol or controlled substance (DUI)). At the time of his arrest, Licensee had been operating a bicycle. We affirm the order of the trial court.

By notice dated October 6, 2011, the Pennsylvania Department of Transportation (Department) notified Licensee that his driving privilege was being suspended for a period of eighteen months, effective November 10, 2011, as a consequence of his refusal to submit to a chemical test on September 15, 2011, under Section 1547(b)(1) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1) (related to chemical testing to determine amount of alcohol or controlled substance).[1] In order to support an eigh-

---

1. Sections 1547(a) and 1547(b) of the Vehicle Code, 75 Pa.C.S. §§ 1547(a) and 1547(b), are commonly referred to as the Pennsylvania Implied Consent Law (Implied Consent Law). Section 1547(b) provides:

    (b) **Suspension for refusal.**-

    (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating license of the person as follows:

    (i) Except as set forth in subparagraph (ii), for a period of 12 months.

    (ii) For a period of 18 months if any of the following apply:

    (A) The person's operation privileges have previously been suspended under this subsection.

teen-month suspension of Licensee's operating privilege under 75 Pa.C.S. § 1547(b)(1)(ii), it was necessary for the Department to prove that Licensee (1) was arrested by an officer who had reasonable grounds to believe that Licensee was operating or was in actual physical control of the movement of a vehicle while he was in violation of 75 Pa.C.S. § 3802; (2) was asked to submit to a chemical test; (3) refused to do so; (4) was specifically warned that a refusal would result in the suspension of his operating or driving privilege and would result in his being subject to the penalties set forth in 75 Pa.C.S. § 3804(c) (relating to penalties) if he were later convicted of violating 75 Pa.C.S. § 3802(a)(1); and (5) was subject to one of the statutory enhancing provisions contained in 75 Pa.C.S. § 1547(b)(1)(h). *Sitoski v. Department of Transportation, Bureau of Driver Licensing,* 11 A.3d 12, 21–22 (Pa.Cmwlth.2010). Section 1547(b)(1)(h) provides for enhancement of a suspension to eighteen months where the licensee has previously been sentenced for a DUI offense. 75 Pa.C.S. § 1547(b)(1)(ii)(B)(I). Because Licensee had been convicted and sentenced in 2007 for DUI (Supplemental Reproduced Record, Appendix A), he was subject to an eighteen-month suspension.

Licensee filed a statutory appeal from the eighteen-month suspension with the trial court, and *de novo* hearing was held on April 12, 2013. The sole witness at the hearing was Adams Township Police Department Officer Edward Lenz (Officer Lenz), who testified that while on patrol at a shopping plaza on September 15, 2011 at about 11:50 PM, he observed Licensee riding a bicycle through the parking lot. (Driver's License Suspension Hearing, Item 9, Certified Record (R.) at 6, Repro-duced Record (R.R.) at 125a.) Officer Lenz stated that Licensee approached the intersection adjacent to the plaza parking lot, stopped at a red light there and continued through the intersection while the red light remained steady; he observed that Licensee's bicycle lacked the required headlight and side reflectors. (*Id.*) Officer Lenz then activated his emergency lights in order to effectuate a stop, but Licensee waved him on. (R. at 6–7; R.R. at 125a–126a.) When Officer Lenz did not pass him, Licensee stopped his bicycle and upon request, provided his driver's license, an ignition interlock license. (R. at 7, R.R. at 126a.) Officer Lenz stated that he observed an odor of alcohol on Licensee's breath, and that Licensee's speech was slurred; he stated that when Licensee dismounted his bicycle and walked toward Officer Lenz's vehicle, he evidenced difficulty walking. (*Id.*) After Licensee refused to perform field sobriety tests, he was placed under arrest for suspicion of DUI. (R. at 8, R.R. at 127a.) Officer Lenz read Licensee the Form DL–26 warnings, and Licensee refused to submit to a chemical test of his blood; he indicated to Officer Lenz that he was refusing because he did not believe that he could be arrested for DUI while riding a bicycle. (R at 9, R.R. at 128a.)

■ Officer Lenz further testified that after he had placed Licensee under arrest, he telephoned the assistant district attorney on call to verify that Licensee could in fact be prosecuted for DUI while riding a bicycle; after receiving such verification, he asked Licensee two additional times whether he would submit to a chemical test, once at the scene of the arrest, and again after he had driven Licensee to Licensee's home. (R. at 11, R.R. at 130a.)

(B) The person has, prior to the refusal under this paragraph, been sentenced for:
(I) an offense under section 3802;

- - -

75 Pa.C.S. § 1547(b).

Officer Lenz agreed on cross-examination that prior to the stop, Licensee did not appear to have problems riding the bicycle and the bicycle was not swerving. (R. at 13, R.R. at 132a.) At the conclusion of the hearing, the trial judge denied Licensee's appeal and reinstated the driver's license suspension. Licensee thereupon filed a post-trial motion for reconsideration and request for supersedeas, which were granted by the trial court. Following a hearing held on June 28, 2013, the trial court reaffirmed its prior decision. This appeal followed.[2]

Before this Court, Licensee argues that the trial court erred in refusing to consider the testimony of Officer Lenz at the preliminary hearing on the criminal proceedings (the transcript of which was attached to Licensee's Motion for Reconsideration but not introduced at the license suspension hearing). Licensee argues this testimony would negate the trial court's finding that Officer Lenz had reasonable grounds to believe that Licensee was operating his bicycle while under the influence of alcohol. In addition, Licensee argues that the trial court erred in finding that Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, applies to the operation of a bicycle.

In its opinion, the trial court noted that the Department was not party to the preliminary hearing in the criminal investigation, and did not have the opportunity to cross-examine Officer Lenz; the trial court concluded that the only proper evidence to have been considered was the transcript of

the statutory appeal and the sworn testimony of Officer Lenz at the license suspension hearing. (Record Item 24, Rule 1925(a) Opinion of the trial court, August 28, 2013 at 4.)

We find *sub judice* that the trial court was correct in declining to consider the contents of the preliminary hearing transcript attached to the Motion for Reconsideration; however, we note that Officer Lenz's testimony at the preliminary hearing is not properly before this Court, not because the Department was not a party to the preliminary hearing, but rather because Licensee failed to offer the preliminary hearing transcript into evidence at the statutory hearing, and has therefore waived his right to do so at this stage of the proceedings.

In any event, Officer Lenz's testimony at the preliminary hearing fails to contradict his testimony before the trial court at the statutory appeal hearing.[3] At *both* the preliminary hearing and the license suspension hearing, Officer Lenz testified on cross-examination that Licensee was able to ride his bicycle without swerving for the approximately 300 yards he was under observation, and was able to hold the bicycle with one hand while he motioned with his other hand for Officer Lenz to go around him. Officer Lenz also testified at both hearings that Licensee's speech was slurred, but that he was able to understand what Licensee said to him. Nevertheless, the trial judge opined that at the time Licensee was stopped by Offi-

2. Our review is limited to determining whether the trial court's findings are supported by substantial evidence, whether errors of law have been committed or whether the trial court's determinations demonstrate a manifest abuse of discretion. *Lanthier v. Department of Transportation, Bureau of Driver Licensing*, 22 A.3d 346, 350 n. 5 (Pa.Cmwlth. 2011).

3. Indeed, Officer Lenz testified at the preliminary hearing that he had to tell Licensee three times to get into his patrol vehicle as he was in custody, that Licensee had to be held up in order to walk from the police vehicle to his front door, that Licensee lost his balance and nearly fell as Officer Lenz attempted to remove his handcuffs, and that once inside his house, Licensee fell into the stair railing, knocking out a railing post.

cer Lenz, he was operating his bicycle without the required headlights and side reflectors,[4] and had been observed illegally continuing through a steady red light, and once stopped, the smell of alcohol on his breath, slurred speech, and an unsteady gait had been observed. (*Id.* at 6–7.) The trial court determined that reasonable grounds existed for Officer Lenz to have concluded that Licensee had been operating the bicycle while under the influence of alcohol at the time he arrested Licensee for DUI and requested that Licensee submit to chemical testing. The question of whether reasonable grounds exist is one of law, which is based upon the facts as found by the trial court. *Gasper v. Department of Transportation, Bureau of Driver Licensing,* 674 A.2d 1200 (Pa.Cmwlth.1996). Here, the trial court's finding is supported by substantial evidence, Officer Lenz's testimony that he observed the odor of alcohol and intoxicated behavior after he stopped Licensee; as such, the trial court did not err in rejecting Licensee's argument that Officer Lenz lacked reasonable grounds to believe that he was intoxicated.

■ Licensee also argues that the Implied Consent Law should not apply to an individual who is operating a bicycle. He states that the implied consent of a motorist is given in exchange for the privilege of a driver's license to operate a motor vehicle, and there is no requirement to obtain a license to operate a bicycle. Thus, he argues, there cannot be a statutorily mandated requirement to impliedly consent to chemical testing in exchange for the privilege of operating a bicycle.

Section 1547 of the Implied Consent Law states:

(a) **General rule.**—Any person who drives, operates or is in actual physical control of the movement of a *vehicle* in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if the police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a *vehicle:*

(*l*)In violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or

- - -

75 Pa.C.S. § 1547(a)(1) (emphasis supplied.) Section 3802 provides:

(a) General Impairment.

(1) An individual may not drive, operate or be in actual physical control of the movement of a *vehicle* after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating, or being in actual physical control of the movement of the *vehicle.*

75 Pa.C.S. § 3802(a)(1) (emphasis supplied.)

■ Prior to changes effective February 1, 2004, the Implied Consent Law clearly did not apply to individuals who

---

4. Section 3507 of the Vehicle Code requires that "[e]very pedalcycle when in use between sunset and sunrise shall be equipped on the front with a lamp which emits a beam of white light intended to illuminate the pedalcycle operator's path and visible from a distance of at least 500 feet to the front, a red reflector facing to the rear which shall be visible at least 500 feet to the rear, and an amber reflector on each side ..." 75 Pa.C.S. § 3507(a).

were stopped and suspected of operating a bicycle under the influence of alcohol or a controlled substance; only if the police officer had reasonable grounds to believe that the individual was driving, operating or in actual physical control of the movement of a *"motor"* vehicle while under the influence was consent to chemical testing implied to have been given. However, Section 1547(a) was revised in 2004 to twice delete the word *"motor"* prior to the word *"vehicle."* By this amendment, the Legislature effectively established that a person who operates a "vehicle," as defined in the Vehicle Code, has implicitly given his consent to submit to chemical testing. "Vehicle" is defined in the Vehicle Code to include bicycles. 75 Pa.C.S. § 102. A bicycle is both a "pedalcycle" and a "vehicle." *Kronenbitter v. Department of Transportation, Bureau of Driver Licensing,* 150 Pa.Cmwlth. 344, 615 A.2d 949, 950 (1992).[5]

Licensee points out that although the word *"motor"* was twice removed from Section 1547(a), Section 1547(a)(1) references two other sections of the Vehicle Code (relating to driving while a license is suspended or revoked and to illegally operating a motor vehicle not equipped with ignition interlock), each of which section retains the word *"motor"* before *"vehicle"* and clearly contemplate the requirement for a motor vehicle. We find no merit in this argument; the additional sections contemplate violations that can only apply to drivers of motor vehicles. Licensee also deems significant the Legislature's failure

to delete the word "motor" prior to the word "vehicle" in Section 3755 (mandating hospital emergency room personnel to take blood samples from persons injured in a motor vehicle accident who may have been operating a motor vehicle). This omission, however, does not override the clear intent of the Legislature to allow police officers to request chemical testing of those believed to be operating a bicycle in an intoxicated condition.

■■ The law provides that a change in the language of a statute ordinarily indicates a change in the legislative intent, *Masland v. Bachman,* 473 Pa. 280, 374 A.2d 517, 521 (1977), and that the Legislature must be presumed to have intended every word of a statute to have effect. *Commonwealth v. Driscoll,* 485 Pa. 99, 401 A.2d 312, 315 (1979). Deletion of the word "motor" prior to the word "vehicle" therefore shows that the Legislature intended to extend the Implied Consent Law to apply to the operators of vehicles as defined, including bicycles, in recognition of the fact that the drunken operator of a bicycle poses danger to himself and to others on the roads. It was clearly the Legislature's intent to require those operating bicycles on the highway to comply, *in pari materia,* with the provisions of the Code relating to the safe operation of motor vehicles on the highway and, as such, is a legitimate exercise of the Commonwealth's police power. Moreover, the "operating privilege" accorded, as defined by the legislature in the Vehicle Code,[6] is not only the privilege to apply for and obtain a

---

**5.** A *"vehicle"* is defined as "[e]very device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks ..." 75 Pa.C.S. § 102. A "pedalcycle" is defined as "[a] vehicle propelled solely by human-powered pedals ..." *Id.* A bicycle is a "vehicle" for purposes of prosecution for driving under the influence of alcohol or controlled substances. *Common-*

*wealth v. Brown,* 423 Pa.Super. 264, 620 A.2d 1213 (1993).

**6.** "Operating Privilege" is defined as "[t]he privilege to apply for and obtain a license to use as well as the privilege to use a vehicle on a highway as authorized in this title, but not a contract, property right or civil right." 75 Pa.C.S. § 102.

driver's license, but also "the privilege to use a vehicle on the highway." 75 Pa.C.S. § 102.

As stated, the Department here met its burden of proof. Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 28th day May, 2014, the order of the Court of Common Pleas of Butler County in the above-captioned matter is AFFIRMED.