IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas E. Bold, Jr.                          :
                                             :
                v.                           : No. 784 C.D. 2020
                                             : Argued:  December 15, 2021
Commonwealth of Pennsylvania,                :
Department of Transportation,                :
Bureau of Driver Licensing,                  :
                                             :
                        Appellant            :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge[1]
           HONORABLE MARY HANNAH LEAVITT, Judge[2]
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


OPINION BY JUDGE WOJCIK                       FILED:  November 21, 2022


                The Commonwealth of Pennsylvania, Department of Transportation,
Bureau of Driver Licensing (DOT), appeals from an order of the Court of Common
Pleas of Cumberland County (trial court) that sustained the appeal of Thomas E.
Bold, Jr. (Licensee) from an 18-month suspension of his operating privilege imposed
by DOT pursuant to Section 1547(b)(1)(ii) of the Vehicle Code, 75 Pa. C.S.

_____

[1] This case was assigned to the opinion writer before January 7, 2022, when Judge Cohn
Jubelirer became President Judge.

[2] This matter was assigned to the panel before January 3, 2022, when President Judge
Emerita Leavitt became a senior judge on the Court.

§1547(b)(1)(ii) (Implied Consent Law),[3] because he failed to submit to a chemical test of his blood. For the following reasons, we reverse.

By notice mailed on February 5, 2020, DOT informed Licensee that it was suspending his operating privilege for 18 months, effective March 11, 2020, as the result of his failure to submit to chemical testing on January 25, 2020. Reproduced Record (R.R.) at 5a-8a. Licensee appealed his suspension to the trial court, and a *de novo* hearing was held on July 10, 2020. *Id.* at 3a-4a, 17a.

At the hearing, DOT submitted, *inter alia*, "[s]ub-exhibit" No. 4 to establish that Licensee was previously convicted in 2007 under Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802, for driving under the influence of alcohol or a controlled substance (DUI) and, therefore, was subject to an 18-month suspension of his operating privilege.[4] R.R. at 19a (sub-exhibit No. 4 is part of DOT Exhibit C-1 in the Original Record (packet of certified documents)). DOT then presented the testimony of the arresting officer, Thomas Eugene Gelnett, of the Lower Allen Township Police Department, who was the sole witness to testify at the hearing.

Officer Gelnett testified that he was on patrol at the Capital City Mall on January 25, 2020, at 6:14 p.m., when he was dispatched to check on "a vehicle in the parking lot that was running with a gentleman passed out behind the wheel." R.R. at 21a. He located the vehicle, which was unlocked and running, with the headlights on. *Id.* at 22a, 24a. He opened the driver's side door and shut off the

---

[3] Section 1547(b)(1)(ii) authorizes DOT to suspend the driving privilege of a licensee for 18 months as a consequence of his refusal to submit to chemical testing in connection with his arrest for violating Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802 (relating to driving under the influence of alcohol or a controlled substance (DUI)). 75 Pa. C.S. §1547(b)(1)(ii).

[4] *See* Section 1547(b)(1)(ii)(B)(I) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(ii)(B)(I) (authorizing an 18-month suspension where the licensee was previously sentenced for DUI).

engine. *Id.* at 22a. Officer Gelnett then woke Licensee, who was in the driver's seat, smelled of alcohol, and appeared "obviously intoxicated." *Id.*

Officer Gelnett stated that the vehicle "was legally parked in a parking space" near the mall's liquor store and a Primanti Brothers bar and restaurant. R.R. at 23a. Licensee told Officer Gelnett that he had been in Primanti Brothers watching a game, "and [that] he just [went] out to his truck and was sleeping in his truck [until] he thought he was able to drive home." *Id.* at 24a. Officer Gelnett explained that Licensee had difficulty producing his driver's license, registration, and proof of insurance. Officer Gelnett further explained that after asking for Licensee's license, he asked Licensee to step out of the vehicle so Officer Gelnett could conduct field sobriety tests. *Id.* Officer Gelnett stated that Licensee could not follow instructions, was unsteady on his feet, and was very argumentative. *Id.* at 25a. Licensee refused to submit to a preliminary breath test and **insisted that he was not driving.** *Id.* Officer Gelnett responded that Licensee was sitting behind the wheel of a running vehicle and, thus, was in actual physical control of the vehicle. *Id.*

Officer Gelnett placed Licensee under arrest, read him the DOT Form DL-26 (DL-26) warnings, and asked if he would submit to a blood test. R.R. at 26a. Licensee agreed, but on the way to the hospital, he became argumentative and said he had questions. Officer Gelnett read the DL-26 warnings to Licensee a second time at the hospital, and Licensee again **argued that he was not driving.** *Id.* at 27a. Officer Gelnett told Licensee that if he continued to argue, it would be recorded as a refusal. *Id.* at 29a. Licensee continued to argue, and Officer Gelnett determined that Licensee had refused to submit to the chemical test. *Id.*

On cross-examination, Officer Gelnett confirmed that Primanti Brothers serves alcohol. R.R. at 30a. He agreed that it was dark and cold outside at

3

the time that he was dispatched to Licensee's vehicle.  *Id.* at 31a.  Officer Gelnett also **agreed that there was no indication that Licensee drove or moved his vehicle that night, and that "[t]he indication was that he left . . . Primanti Brothers, got into his car[,] and turned his vehicle on[.]"** *Id.* (emphasis added).

Licensee's counsel then argued that DOT could not meet its burden of proving that Officer Gelnett had reasonable grounds to believe that Licensee was in **actual physical control of his vehicle** while intoxicated.  In support, counsel cited case law, including *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009), and stated that *Solomon* was "right on point."  R.R. at 32a-33a.  Counsel also directed the court's attention to *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999), and *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995).  R.R. at 33a-34a.  The trial court took a brief recess to review the case law, after which the trial judge stated on the record that DOT met its burden of proof and dismissed Licensee's appeal.  *Id.* at 34a-35a.[5] However, by order dated July 10, 2020, but entered on July 16, 2020, the trial court reversed course, holding that Officer Gelnett did not have reasonable grounds to believe that Licensee was in control of the movement of the vehicle at the time of his arrest for DUI, and sustained Licensee's appeal.  *Id.* at 37a.  DOT appealed to this Court.  *Id.* at 38a.

On December 31, 2020, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a), explaining the reasoning for its decision.  R.R. at 49a-53a.  The trial court found as fact, among other things, that Licensee became intoxicated at Primanti Brothers and then went out to his vehicle, turned it on, and fell asleep

---

[5] The transcript notes that the trial court's ruling "was dictated but was not signed and filed as an Order of Court[.]"  Reproduced Record (R.R.) at 34a.

behind the wheel. *Id.* at 49a-50a. The trial court nevertheless determined that there was no evidence presented upon which Officer Gelnett could have reasonably inferred that the vehicle had been **driven** while Licensee was intoxicated. *Id.* at 52a-53a. In a footnote, however, the trial court "concede[d] that the facts clearly show that [] Licensee was in control of the 'operation' of the vehicle." *Id.* at 52a n.6. Accordingly, based on the above, and relying on *Solomon*, the trial court sustained the appeal and overturned Licensee's suspension.

On appeal,[6] DOT raises one issue. It argues that the trial court erred as a matter of law in holding that Officer Gelnett did not have reasonable grounds to believe that Licensee was operating or in actual physical control of the movement of his vehicle while he was intoxicated. Brief for Appellant at 14. DOT asserts that, although Officer Gelnett testified that he did not believe Licensee had driven his vehicle while intoxicated, Officer Gelnett still had reasonable grounds to believe that Licensee was in actual physical control of the movement of the vehicle while he was intoxicated, because Officer Gelnett credibly testified that he found Licensee passed out in the driver's seat of his vehicle, he was "obviously intoxicated," the key was in the ignition, the vehicle's engine was running, and the headlights were on. Brief for Appellant at 18. As such, DOT contends that Licensee had the ability to put the vehicle in motion at any time and, thus, was operating or in actual physical control of the movement of the vehicle.[7] DOT claims that this Court's decision in *Vinansky*

---

[6] This Court's scope of review is "limited to determining whether [the trial court] committed an error of law, whether [the trial court] abused its discretion, or whether the findings of fact are supported by substantial evidence." *Garlick v. Department of Transportation, Bureau of Driver Licensing*, 176 A.3d 1030, 1035 n.6 (Pa. Cmwlth. 2018).

[7] In its brief, DOT spends considerable time explaining our Supreme Court's decision in *Balentine v. Chester Water Authority*, 191 A.3d 799 (Pa. 2018), in an attempt to establish "what **(Footnote continued on next page…)**

supports its case, Brief for Appellant at 18-20, and that *Solomon*, upon which both the trial court and Licensee relied, is distinguishable. DOT also points out that this Court's decision in *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380 (Pa. Cmwlth. 2010), further distinguishes *Solomon* from this case.

---

constitutes operating or being in actual physical control of the movement of a vehicle" in this case. Brief for Appellant at 23-25. *Balentine* involved a local water authority employee who had parked his work vehicle partially on a roadway at a worksite with the engine running. The parked vehicle was struck from behind, and a contractor who was also working at the worksite was struck and fatally injured. The decedent's widow brought a negligence action against, *inter alia*, the local water authority, which moved for summary judgment based on governmental immunity. The trial court granted the motion and dismissed all claims against the authority and its employee, and this Court affirmed, holding that the parked vehicle was not in operation at the time that it struck the decedent. The Supreme Court granted discretionary review to consider whether this Court "erred in holding that the involuntary movement of a vehicle does not constitute operation of a motor vehicle for purposes of the vehicle liability exception to governmental immunity under" Section 8542(b)(1) of what is commonly known as the Political Subdivision Tort Claims Act (Tort Claims Act), 42 Pa. C.S. §8542(b)(1) (imposing liability on a local agency for negligence in "[t]he operation of any motor vehicle in the possession or control of the local agency"). *Balentine*, 191 A.3d at 802. The Supreme Court ultimately held that the widow established a *prima facie* cause of action in negligence based on acts that constituted operation of the vehicle and, thus, reversed this Court's holding to the contrary.

In relying on the *Balentine* Court's interpretation of what constitutes "operation" for purposes of the vehicle liability exception to the Tort Claims Act, which the Court stated involves "a series of decisions and actions," DOT asserts that Licensee's decisions in this case, *i.e.*, getting in his vehicle after drinking at Primanti Brothers, placing the key in the ignition, and turning the car on, demonstrates that he was in control of the operation or movement of his vehicle under the relevant provisions of the Vehicle Code. *Balentine*, 191 A.3d at 810. However, *Balentine* did not involve the question of what constitutes operation or actual physical control of the movement of a vehicle in the context of a license suspension appeal under the Vehicle Code, 75 Pa. C.S. §§101-9805, and, we note, that this particular issue is not presently before us. This case involves the issue of whether the arresting officer had reasonable grounds for requesting that Licensee submit to chemical testing. There is a wealth of case law specifically addressing DOT's burden in that regard under the Implied Consent Law, and we need not search far afield to interpret what that pertinent case law has already addressed. We therefore decline DOT's attempt to have this Court extend the *Balentine* Court's interpretation of what constitutes "operation" in the context of the vehicle liability exception to governmental immunity under the Tort Claims Act to this case.

6

In response, Licensee argues that the trial court was correct in determining that Officer Gelnett lacked reasonable grounds to believe that Licensee was in actual physical control of the vehicle while intoxicated. Licensee analogizes the facts of this case to those found in *Solomon* and appears to focus his argument on the premise that Officer Gelnett lacked reasonable grounds because there was no objective evidence that Licensee **drove** his vehicle while intoxicated. Brief for Appellee at 3 (citing *Solomon* and *Gammer*). He claims that absent such evidence, the totality of the circumstances indicated that Licensee was simply "sleeping off his alleged intoxication" following his visit to Primanti Brothers. *Id.* at 3-4.

Section 3802(a)(1) of the Vehicle Code states:

> An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being **in actual physical control of the movement of the vehicle.**

75 Pa. C.S. §3802(a)(1) (emphasis added). Section 1547 of the Vehicle Code, commonly referred to as the Implied Consent Law, permits chemical testing of drivers under certain circumstances. 75 Pa. C.S. §1547. To sustain the suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code, DOT has the burden of proving at the statutory appeal hearing that the licensee:

> (1) was arrested for [DUI] by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

7

*Banner*, 737 A.2d at 1206. The test for whether a police officer had reasonable grounds to believe that a licensee was operating or in actual physical control of the movement of a vehicle while intoxicated is not very demanding, and it is not necessary for the police officer to be correct in his or her belief. *Department of Transportation, Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990). Reasonable grounds are established when a "police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207. "In determining whether an officer had reasonable grounds to believe that a [licensee] was in 'actual physical control' of a vehicle, [a] court must consider the totality of the circumstances, including the location of the vehicle, [and] whether the engine was running[.] *Id.* **"[A]t the very least, there must be some objective evidence that the motorist exercised control over the movement of the vehicle at the time he was intoxicated."** *Gammer*, 995 A.2d at 384 (quoting *Banner*, 737 A.2d at 1207) (emphasis added). Further, "[i]t is immaterial whether alternative reasonable explanations for how the motorist came to be as he was found exist." *Gammer*, 995 A.2d at 384 (citing *Bird*, 578 A.2d at 1348). "Whether reasonable grounds exist is a question of law reviewable by a court on a case[-]by[-]case basis." *Banner*, 737 A.2d at 1207.

In its brief, DOT argues that reasonable grounds were established in this case because Licensee was found intoxicated in his vehicle with the engine running and the headlights on, citing *Vinansky* in support. We agree and conclude that the facts in *Vinansky* are nearly identical to those of the instant matter. In *Vinansky*, 665 A.2d 860, the licensee's vehicle was parked in a parking lot behind a volunteer fire company near the entrance to its private social club. The licensee was

8

seated in the driver's seat of the vehicle with his head slumped over the steering wheel. The vehicle was running, and the brake lights were on. The police officer opened the door of the vehicle, turned off the ignition, and extracted the licensee from the vehicle. The licensee smelled of alcohol and was unable to speak or stand without assistance. The licensee was transported to the police station, where he refused a breathalyzer test. Ultimately, DOT notified the licensee that his operating privilege would be suspended for one year for refusing to submit to chemical testing. The licensee appealed to the common pleas court.

On appeal, the licensee argued, *inter alia*, that the police officer did not have reasonable grounds to believe that the licensee was operating or in actual physical control of the vehicle while intoxicated. The common pleas court agreed, and DOT appealed to this Court. We agreed with DOT, noting that the vehicle was running, the licensee's foot was on the brake pedal, and he was passed out over the steering wheel. *Vinansky*, 665 A.2d at 863. Thus, we held that the officer's testimony was sufficient to establish reasonable grounds.

Here, the trial court based its decision on *Solomon*, 966 A.2d 640. However, we agree with DOT that *Solomon* can be distinguished from this case in the same manner it was distinguished by the Court in *Gammer*, 995 A.2d 380. In *Solomon*, a police officer discovered the licensee at approximately 3:00 a.m., in January, asleep **in the reclined driver's seat** of his car, which was parked in a driving lane across the street from a gentlemen's club. Although the car was running at the time, it was undisputed that it was cold and snowy that night. The arresting officer testified that he stopped because the licensee's car was parked in the driving lane, but on cross-examination, he testified that it was common for patrons of the club to park there. Based on the above facts, the common pleas court found that the

9

officer did not have reasonable grounds to believe that the licensee was operating or in actual physical control of the movement of his vehicle while intoxicated. On appeal, this Court affirmed the common pleas court's finding, concluding that, given the totality of the circumstances, the evidence fell short of proving that the licensee exercised control over the movement of the vehicle while he was intoxicated. *Solomon*, 966 A.2d at 642.

In *Gammer*, a police officer discovered the licensee's vehicle running in the back of a motel parking lot near the dumpsters. The licensee was seated in the driver's seat but was slouched over the passenger seat, and he appeared to be either asleep or unconscious. The officer also knew the licensee because the officer had arrested him twice before for DUI, so the officer called for backup and another officer arrived. The common pleas court found the officers' testimony credible and held that the licensee was in actual physical control of the vehicle. On appeal, we agreed with the common pleas court that the officers had reasonable grounds to believe that the licensee was in actual physical control of the vehicle. We stated that "[g]enerally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test." *Gammer*, 995 A.2d at 384. We also observed that relevant case law[8] makes "clear that the reasonable grounds test is satisfied when a police officer discovers . . . a

---

[8] *See Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115 (Pa. Cmwlth. 2008) (reasonable grounds established where the licensee was discovered passed out in the driver's seat of his car parked on the side of the road with its headlights and engine on); *Vinansky*; *Department of Transportation, Bureau of Driver Licensing v. Paige*, 665 A.2d 860, 862-63 (Pa. Cmwlth. 1995) (reasonable grounds established where licensee was asleep, slumped over steering wheel with the key in the ignition and parking lights on, while parked on city street); and *Polinsky v. Department of Transportation, Bureau of Driver Licensing*, 569 A.2d 425 (Pa. Cmwlth. 1990) (reasonable grounds established where the licensee was found asleep behind the wheel of her car parked beside a fast food restaurant's pick-up window with its headlights on, the vehicle was in gear, and the ignition switch was turned on, but the engine was not running).

motorist slumped over in the driver's seat of the vehicle with the engine running while the vehicle is parked in a legal parking space in a parking lot." *Id.*

As this Court has recently explained:

> The case relied upon by [the trial court], *Solomon*, is not only an outlier[,] but is distinguishable. There, the motorist was found sleeping **in a reclined driver's seat** and the Court found significant that, although the engine was running, it was a cold and snowy night. [Similarly, in *Banner*, where our Supreme Court found a lack of reasonable grounds, the motorist was **reclined in the passenger's seat** and the engine was turned off.]
>
> Here, [the trial court] credited [the police officer's] testimony that [the licensee] was passed out and slumped over the wheel in the driver's seat of his vehicle with the engine running, which caused [the officer] to conclude that he had been in physical control of the movement of his vehicle while intoxicated. This satisfies the test for reasonable grounds utilized by the controlling case[]law and, accordingly, we reverse.

*Hambright v. Department of Transportation, Bureau of Driver Licensing* (Pa. Cmwlth., Nos. 782 and 783 C.D. 2020, filed September 30, 2021) (emphasis added), slip op. at 7 (emphasis added).[9]  Thus, although distinguishable as stated in

---

[9] The instant appeal was decided by the trial court in tandem with the license suspension appeal filed in *Hambright*.  As the trial court explained:

> Being that [DOT] rested on *Vinansky*, we believed that it was advancing the theory that the officer had reasonable grounds to believe that Licensee was in control of the truck's operation. Accordingly, we dismissed the appeal and reinstated the suspension on the record.  However, it later became clear by [DOT's] next case at *Hambright v. Dep[artment] of Transp[ortation]*, CP-21-CIVIL-2020-02923 (Com. Pl. 2020), that it was seeking the suspension for the refusal on the theory that the officer had reasonable grounds to believe that [the l]icensee was in control of the movement of the truck rather than its operation.  After [DOT] clarified that it had used

**(Footnote continued on next page…)**

11

*Hambright*, to the extent that *Solomon* compels a different result herein, it is expressly overruled.

Applying the above principles here, we hold that the trial court erred as a matter of law in determining that Officer Gelnett lacked reasonable grounds to believe that Licensee was in actual physical control of the movement of the vehicle. Officer Gelnett testified that he found Licensee passed out in the driver's seat of his car parked outside Primanti Brothers in the Capital City Mall parking lot, slumped over the wheel with the engine running and headlights on. R.R. at 21a-24a. Pursuant to *Gammer*, these facts alone are sufficient to satisfy the reasonable grounds test. *See Gammer*, 995 A.2d at 384. Officer Gelnett also testified that he had to open the driver's side door, which was unlocked, shut off the engine, and then wake Licensee. R.R. at 22a, 24a. Officer Gelnett stated that once Licensee awoke, he immediately smelled alcohol on Licensee's breath and observed that Licensee appeared "obviously intoxicated." *Id.* at 22a. Officer Gelnett further observed that Licensee had difficulty producing his driver's license, registration, and proof of insurance, and that Licensee could not follow instructions with regard to field sobriety testing,

---

movement as the basis for the refusal in the present case as well as in the *Hambright* case, we simply changed our ruling to sustain the appeal and ordered that the transcript of *Hambright* be used to supplement the record of the case at bar.

R.R. at 51a (footnote omitted). *Stare decisis* "maintains that for purposes of certainty and stability in the law, 'a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same.'" *Stilp v. Commonwealth*, 905 A.2d 918, 966-67 (Pa. 2006) (citation omitted); *see also* Pa. R.A.P. 126(b) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. [] Non-precedential decisions . . . may be cited for their persuasive value.").

was unsteady on his feet,[10] and was argumentative. *Id.* at 24a-25a. Licensee also refused chemical testing,[11] insisting instead that he had not driven. *Id.* at 25a-26a. The above facts are sufficient to have given Officer Gelnett reasonable grounds to believe that Licensee was in actual physical control of his vehicle while intoxicated.

Our precedent has often conflated the term "operates" with the phrase "is in actual physical control of the movement of a vehicle," as used in Section 1547(a) of the Vehicle Code. This conflation has engendered confusion in license suspension implied consent cases concerning the issue presented herein, *i.e.*, whether an arresting officer has reasonable grounds to believe that a licensee was in actual physical control of the movement of a vehicle, where the arresting officer testifies, and the facts indicate, that the licensee had not been driving. In an effort to eliminate this confusion, we hold that because Officer Gelnett had reasonable grounds to believe that Licensee was in actual physical control of his vehicle while intoxicated, despite the fact that Licensee was not driving, Officer Gelnett properly requested that Licensee undergo chemical testing.

Accordingly, we reverse the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

Judge McCullough dissents.
Judge Fizzano Cannon dissents.

---

[10] A licensee's unsteadiness on his feet may be considered by an officer. *See Mooney v. Department of Transportation, Bureau of Driver Licensing*, 654 A.2d 47, 49 (Pa. Cmwlth. 1994).

[11] A licensee's refusal to submit to chemical testing may be considered. *Koutsouroubas v. Department of Transportation, Bureau of Driver Licensing*, 61 A.3d 349, 353 (Pa. Cmwlth. 2013).

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas E. Bold, Jr.                    :
                                       :
            v.                         : No. 784 C.D. 2020
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing,            :
                                       :
                    Appellant          :


# **O R D E R**


AND NOW, this 21ˢᵗ day of November, 2022, the order of the Court of Common Pleas of Cumberland County, dated July 10, 2020, is REVERSED.


_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas E. Bold, Jr.                     :
                                        :
        v.                              :   No. 784 C.D. 2020
                                        :   Argued: December 15, 2021
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing,             :
                        Appellant       :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge
           HONORABLE ELLEN CEISLER, Judge


DISSENTING OPINION
BY JUDGE LEAVITT                                FILED: November 21, 2022


        Section 3802 of the Vehicle Code, entitled "Driving under influence of alcohol or controlled substance," 75 Pa. C.S. §3802, makes such driving a criminal offense. The majority holds that occupying a stationary vehicle while inebriated authorizes an arrest under Section 3802 of the Vehicle Code and a demand for chemical testing under Section 1547(a) of the Vehicle Code, 75 Pa. C.S. §1547(a). However, longstanding precedent of our appellate courts requires vehicle movement by the inebriated occupant in order to trigger either Section 3802 or Section 1547(a) of the Vehicle Code. Respectfully, I dissent.

        On January 25, 2020, at approximately 6:14 p.m., the arresting officer found Thomas E. Bold, Jr. (Licensee) asleep in the driver's seat of his vehicle in a parking lot near the restaurant where he had been drinking that afternoon. The Court

of Common Pleas of Cumberland County (trial court) summarized the situation found by the arresting officer as follows:

> [The officer] came across Licensee while he slept in the truck with the engine running. From the officer's testimony, the truck was merely parked in a parking lot. While the engine was running, *the location of the truck weighed against a finding that it had been driven to that location while [] Licensee was intoxicated. Moreover, the officer testified that Licensee was adamant that he never drove.*
>
> The truck was parked in a parking lot where it is typical to find a parked vehicle, rather than on the side or the middle of a roadway. Furthermore, there are establishments that serve alcohol nearby. *In fact, the restaurant where Licensee had been drinking is served by the parking lot in which his truck was parked. There was no indication that the vehicle had just been driven to that location. We were satisfied that the facts established that after drinking at Primanti Brother's, Licensee merely turned on his vehicle and slept in it.*[]

Trial Court PA. R.A.P. 1925(a) Op., 1/4/2021, at 4-5 (emphasis added and footnote omitted). The trial court concluded that because "[t]*here was no evidence* upon which the officer could have reasonably inferred *that the vehicle had been driven while Licensee was under the influence*[,]" the officer lacked reasonable grounds to believe Licensee had violated Section 3802 of the Vehicle Code. Trial Court PA. R.A.P. 1925(a) Op., 1/4/2021, at 5 (emphasis added). Accordingly, the officer lacked a basis to demand a chemical test. The trial court held that the Department of Transportation, Bureau of Driver Licensing (PennDOT) did not make a case for a license suspension under Section 1547(b)(1) of the Vehicle Code. 75 Pa. C.S. §1547(b)(1).[1]

---

[1] It states, in pertinent part, as follows:

The majority does not dispute the trial court's conclusion that there was no evidence on which the officer could infer "that the vehicle had been driven while Licensee was under the influence." However, the majority believes such evidence is not necessary. In this regard, the majority departs from appellate precedent defining "actual physical control of the movement of a vehicle." 75 Pa. C.S §§3802, 1547(a).

In *Commonwealth v. Byers*, 650 A.2d 468 (Pa. Super. 1994), Jeffrey Dale Byers, the defendant, was found at 3:00 a.m. asleep in his vehicle located in the parking lot of the Twin Rocks Lounge. The motor was running, and the headlights were on, but the car was not moving. Byers was charged and convicted under former Section 3731 of the Vehicle Code,[2] the antecedent to Section 3802, and he was sentenced to 60 days' incarceration.

On appeal, the key issue was whether the intoxicated defendant had exercised "actual physical control of the movement of any vehicle." *Formerly* 75 Pa. C.S. §3731(a)(1). The Superior Court held that "showing that an intoxicated defendant started a parked car, without more, is not enough to prove actual physical control." *Byers*, 650 A.2d at 470. The Superior Court clarified that "*additional*

---

      (1) *If any person placed under arrest for a violation of section 3802* is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person[.]

75 Pa. C.S. §1547(b)(1) (emphasis added).

[2] Former Section 3731 of the Vehicle Code is virtually identical to current Section 3802 of the Vehicle Code. Section 3731(a)(1) stated that a "person shall not drive, operate or be in actual physical control of the movement of any vehicle while: (1) under the influence of alcohol to a degree which renders the person incapable of safe driving." *Formerly* 75 Pa. C.S. §3731(a)(1). Section 3802(a)(1) provides that an "individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is incapable of safely driving, operating or being in actual physical control of the movement of the vehicle." 75 Pa. C.S. §3802(a)(1).

*evidence showing that defendant had driven the vehicle*" was needed in order to show "actual physical control of . . . the movement of the vehicle itself." *Id.* (emphasis added). The Superior Court explained that the phrase "actual physical control" was added to the Vehicle Code in 1982[3] "to reach intoxicated drivers who were on the road and were a threat to public safety, but were not actually moving when the police found them." *Byers*, 650 A.2d at 471 (citing *Commonwealth v. Crum*, 523 A.2d 799, 801 (Pa. Super. 1987)). *See also Department of Transportation, Bureau of Driver Licensing v. Bendik*, 535 A.2d 1249, 1251 (Pa. Cmwlth. 1988) ("As a result of the 1982 amendment to Section 1547, it was not necessary that the appellee be observed behind the steering wheel of the vehicle while it is in motion."). In rejecting the Commonwealth's contrary construction of the 1982 amendment, the Superior Court observed that the "Commonwealth is trying to encourage intoxicated people to 'sleep it off' before attempting to drive, yet it wants us to punish Byers for doing just that." *Byers*, 650 A.2d at 471. The Superior Court reversed Byers' conviction.

Summarizing precedent, the Superior Court set forth the test for determining actual physical control of the movement of a vehicle in violation of the Vehicle Code.[4] A court must examine the totality of the circumstances and consider the location of the vehicle, whether the engine is running and whether there is *other*

---

[3] *See* Act of December 15, 1982, P.L. 1268, No. 289.

[4] *Byers* cited to a number of cases that found actual physical control of the movement of the vehicle on the basis of a "combination of the motor running, the location of the vehicle, and additional evidence showing the defendant had driven the vehicle." *Byers*, 650 A.2d at 469. The location of the vehicle in the middle of or alongside a road, with the motor running and the headlights or brake lights on, and witness observation of reckless driving, are examples of evidence that support the finding that the "defendant had driven the vehicle." *Id.*

evidence that the defendant had driven the vehicle prior to the arrival of the police. *Byers*, 650 A.2d at 469.[5]

In *Commonwealth v. Wolen*, 685 A.2d 1384 (Pa. 1996), a 3-3 plurality opinion, our Supreme Court upheld a conviction for driving under the influence (DUI) on facts similar, but not identical, to *Byers*. In *Wolen*, critically, there was evidence that the defendant had moved the vehicle while intoxicated. At issue in the appeal was a jury instruction that keeping a vehicle in restraint or regulating its movement constituted "actual physical control." The plurality held that the jury instruction did not intrude on the jury's fact-finding role. The dissent would have ordered a new trial to allow the jury to determine the ultimate question of "actual physical control" of the movement of the vehicle. *Id*. at 1388 (Zappala, J., dissenting).

---

[5] Heretofore, this Court also applied the *Byers* paradigm in Section 1547(a) cases. *See Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115, 1120 (Pa. Cmwlth. 2008) ("the court must consider the totality of circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police"); *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995) (licensee found slumped over the steering wheel of a truck in a parking lot with engine and brake lights on supported inference of driving vehicle before police arrival); and *Polinsky v. Department of Transportation*, 569 A.2d 425 (Pa. Cmwlth. 1990) (licensee found asleep behind the wheel of vehicle next to a fast-food restaurant's pick-up window with the headlights on, vehicle in gear, and the ignition switch on constituted reasonable grounds to believe licensee operated the vehicle under the influence). In *Department of Transportation, Bureau of Driver Licensing v. Paige*, 628 A.2d 917, 919 (Pa. Cmwlth. 1993), this Court found actual physical control of the vehicle's movement where the licensee was found intoxicated in parked vehicle with lights on and key in the ignition, explaining that the arresting officer does not have "to actually observe the arrestee operating the motor vehicle." *Paige* was decided before *Byers*.

The majority cites the above-listed cases as being distinguishable from *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth. 2009). To the contrary, they each support *Solomon*. In each, either the location of the vehicle, its brake lights or other evidence supported the police officer's inference that the licensee had driven the vehicle before the officer's arrival on the scene.

*Wolen* rejected the Superior Court's statement in *Byers* that the Commonwealth had to present evidence that the defendant presented a threat to public safety. The Supreme Court explained that "a person's threat to public safety is not a relevant consideration under the drunk driving statutes." *Wolen*, 685 A.2d at 1386 n.4. However, *Wolen* did not abrogate the *Byers* test but adopted it, stating that the factors relevant to actual physical control of the movement of the vehicle are the location of vehicle; whether the engine is running; and whether there is other evidence from which the inference can be drawn that the vehicle was operated prior to the arrival of the police. *Id.* at 1385.

*Byers* remains good law. In *Commonwealth v. Brotherson*, 888 A.2d 901 (Pa. Super. 2005), for example, the Superior Court upheld a conviction where the vehicle was found on a basketball court, with the engine running, the defendant in the driver's seat asleep, and malt liquor bottles in the vehicle. The only way the vehicle could have reached the basketball court was by driving over the grass because the park gate had been closed since dusk. Relying on *Byers*, the Superior Court held that the evidence supported the inference that the vehicle had been driven by the intoxicated occupant of the vehicle prior to the arrival of the police.

In sum, where an intoxicated person is found in a stationary vehicle located in a parking lot with the motor running, there must be evidence that the vehicle had been driven by that person (and in that state) prior to discovery by a police officer. The evidence need not be direct or very copious.[6]

---

[6] For example, in *Commonwealth v. Saunders*, 691 A.2d 946 (Pa. Super. 1997), the Superior Court upheld the conviction of a defendant found in a parked vehicle with its motor running in the lot of a convenience store that did not sell alcohol, but was within a short driving distance from establishments that did sell alcohol. This evidence supported the inference that while intoxicated, the defendant had driven his vehicle to the parking lot where he was discovered, and, thus, he was

To suspend a person's operating privilege for refusing chemical testing, PennDOT must prove that this person was arrested for a violation of Section 3802 of the Vehicle Code. 75 Pa. C.S. §1547(b)(1).[7] The arrested licensee will be deemed to have consented to testing if the officer has "reasonable grounds to believe the person to have been driving, operating or *in actual physical control of the movement of a vehicle in violation of* [*S*]*ection . . . 3802* [*of the Vehicle Code*.]" 75 Pa. C.S. §1547(a) (emphasis added).[8]

The majority offers a new construction of Section 1547(a) that eliminates the requirement for vehicle movement. This Court does not have that luxury. We are bound by our Supreme Court's construction of Section 1547(a).

In *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1207 (Pa. 1999) (emphasis added), the Supreme Court adopted the *Byers* paradigm for purposes of Section 1547(a) of the Vehicle Code and reiterated that "'actual physical control' of a vehicle" requires the court to consider the location of the vehicle, whether the engine was running, and "whether

---

held to be in actual physical control of the movement of the vehicle in violation of the Vehicle Code.

[7] *See supra* n.1, at 2.

[8] It states:

> Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance *if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of* section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), *3802 (relating to driving under influence of alcohol or controlled substance)* or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

75 Pa. C.S. §1547(a) (emphasis added).

there was other evidence indicating that the motorist *had driven* the vehicle at some point prior to the arrival of the police." The Supreme Court explained that "at the very least, there must be some objective evidence that the motorist *exercised* control over the *movement of the vehicle* at the time he was intoxicated." *Id.* (emphasis added). "Had driven" and "exercised" are verbs used in the past tense. Lest there be any doubt, the Supreme Court followed this injunction with the instruction that the

> line must be drawn to distinguish circumstances where a motorist is *driving his vehicle while under the influence* of alcohol, which the statute is intended to prevent, and circumstances *where a motorist is physically present in a motor vehicle* after becoming intoxicated.

*Id.* at 1208 (emphasis added).

The majority asserts that "this case involves the issue of whether the arresting officer has reasonable grounds for requesting that Licensee submit to chemical testing." *Bold v Department of Transportation, Bureau of Driver Licensing*, __ A.3d __ (Pa. Cmwlth., No. 784 C.D. 2020, filed November 21, 2022), slip op. at 6, n.7. In actuality, this case is about whether the arresting officer had reasonable grounds to believe Licensee had violated Section 3802 of the Vehicle Code, the precondition to a demand for chemical testing. The majority does not give effect to the final phrase in Section 1547(a), *i.e.*, "*violation of section . . . 3802 (relating to driving under influence of alcohol or controlled substance)*[.]" 75 Pa. C.S. §1547(a). As definitively construed in *Byers*, 650 A.2d 468, this violation requires movement of the vehicle by an intoxicated person. Although "decisions of our sister Superior Court are not binding upon this Court, we always give great deference to their persuasive wisdom and logic[.]" *In re Superior-Pacific Fund,*

*Inc.*, 693 A.2d 248, 253 (Pa. Cmwlth. 1997). It is the Superior Court, not this Court, that determines what conduct violates Section 3802 of the Vehicle Code. Further, this Court expressly adopted the Superior Court construction of the 1982 amendment. *Bendik*, 535 A.2d at 1251.

Moreover, *Byers'* construction of Section 3802 of the Vehicle Code is consistent with the canons of statutory construction. The Statutory Construction Act of 1972 requires that "[a]ll provisions of a statute of the classes hereafter enumerated shall be strictly construed: (1) Penal provisions . . . ." 1 Pa. C.S. §1928(b)(1). A statute that defines criminal offenses and specifies their punishment is penal in nature, *Commonwealth v. Stone and Company*, 788 A.2d 1079, 1082 (Pa. Cmwlth. 2001), and any doubt must be resolved in favor of liberty. *Commonwealth v. Cluck*, 381 A.2d 472, 477 (Pa. Super. 1977). The Superior Court properly gives a strict reading to Section 3802 of the Vehicle Code. *Byers*, 650 A.2d 468; *Saunders*, 691 A.2d 946.[9] Finally, the Superior Court's construction of Section 3802 gives effect to all the words used therein, including "movement of the vehicle." *See* 1 Pa. C.S. §1921(a) ("Every statute shall be construed, if possible, to give effect to all its provisions.").

In contrast, the majority's construction of Section 1547(a) makes the inebriated occupant's ability to place a vehicle in motion in the near future a violation of Section 3802. This construction abandons *Banner*. Instead, it revives the "threat to public safety" precept, which was specifically rejected by the Pennsylvania Supreme Court in *Wolen*, 685 A.2d at 1386, n.4.

---

[9] Likewise, a civil penalty, such as a license suspension, is penal in nature and requires a strict construction. *See Sondergaard v. Department of Transportation, Bureau of Driver Licensing*, 65 A.3d 994, 997 (Pa. Cmwlth. 2013).

MHL-9

*Vinansky*, 665 A.2d 860, and *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380 (Pa. Cmwlth. 2010), do not support the majority. Each case presents similar facts in that the licensee was found intoxicated in a stationary vehicle located in a parking lot and with the engine running. However, in both cases, this Court found that the evidence *in toto* supported a finding that the vehicle had been driven prior to the arrival of the police. *See Vinansky*, 665 A.2d at 863 ("reasonable interpretation" of the evidence was that licensee "drank to excess elsewhere and was attempting to go to the club to continue his drinking" because "his foot was on the brake pedal") (emphasis omitted); *Gammer*, 995 A.2d at 384 ("unusual location of the vehicle next to the dumpsters at the far end of the parking lot" demonstrated the motorist had driven the vehicle). Both cases followed the *Banner* directive on the need for vehicle movement.

Under the Vehicle Code, a "vehicle" includes any machine that moves people, whether or not motorized. The Vehicle Code defines "vehicle" as follows:

> Every device in, upon or by which any person or property is or may be transported or drawn upon a highway, except devices used exclusively upon rails or tracks. The term does not include a self-propelled wheelchair or an electrical mobility device operated by and designed for the exclusive use of a person with a mobility-related disability.

75 Pa. C.S. §102. The range of "vehicle" is broad enough to cover a bicycle powered by the cyclist's feet, a Segway and a motorcycle.

The language of Section 3802 (and Section 1547(a)) was chosen to deal with this definition of "vehicle." One does not "drive" a bicycle, but one can "operate" it. *See Bilka v. Department of Transportation, Bureau of Driver Licensing*, 92 A.3d 1253, 1257-58 (Pa. Cmwlth. 2014) (licensee arrested for "operating" a bicycle on the highway while under the influence of alcohol and

MHL-10

because he refused a chemical test, he then lost his driver's license). By contrast, one "drives" a car or truck. However, all three verbs, "driving," "operating" and "being" in "actual physical control" require vehicle motion. As explained in *Byers*, "actual physical control" was added to cover the situation where intoxicated drivers had driven "on the road" but "were not actually moving when the police found them." *Byers*, 650 A.2d at 471. Vehicle motion is the *sine qua non* of the offense.

The words "driving," "operating," and "actual physical control of the movement of the vehicle" have not been conflated in our implied consent jurisprudence. The difference in the first two verbs is explained by the different types of vehicles that may be observed moving on the highway. The third covers the situation where the arresting officer encounters the vehicle no longer in motion but with evidence sufficient to infer that the vehicle (whether a bicycle or a Lamborghini) had been in motion and under the control of an inebriated licensee, before the arrival of the police on the scene.[10]

The majority departs from a long line of precedent from this Court, *Solomon*, 966 A.2d 640; from the Superior Court, *Byers*, 650 A.2d 468; and from the Supreme Court, *Banner*, 737 A.2d 1203. It may be that for an intoxicated person to sit in the driver's seat of a vehicle standing still in a parking lot, but with the motor on, presents a danger to the public safety because vehicle movement can be initiated with little effort. However, it is for the legislature to make that decision. It has been 40 years since the phrase "actual physical control of the movement of a vehicle" was added to the Vehicle Code, but the General Assembly has chosen not to further amend the statute.

---

[10] I agree with the majority's rejection of PennDOT's effort to transfer the meaning of "operation" used in tort cases to Section 1547(a) of the Vehicle Code. *Bold*, __ A.3d at __, slip op. at 5-6, n.7. Under PennDOT's view, "operating" would refer to a four-wheel motor vehicle in stasis where the licensee is found by the police operating the power windows while under the influence.

I would affirm the trial court.

_____
MARY HANNAH LEAVITT, President Judge Emerita

MHL-12