**Curt Marsden GAMMER, Appellant**

**v.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 12, 2010.

Decided March 5, 2010.

Publication Ordered May 14, 2010.

Erv D. McClain, Bethlehem, for appellant.

Terrance M. Edwards, Asst. Counsel and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellee.

BEFORE: PELLEGRINI, Judge, BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Curt Marsden Gammer (Licensee) appeals the order of the Court of Common Pleas of Lehigh County (trial court) denying his appeal from the Department of Transportation's (PennDOT) one-year suspension of his operating privileges for failure to submit to a chemical test following his arrest for driving under the influence (DUI).

PennDOT suspended Licensee's operating privileges for 12 months following his April 30, 2009 arrest for DUI and refusal to submit to chemical testing pursuant to Section 1547 of the Vehicle Code, 75 Pa. C.S. § 1547.[1] Licensee filed an appeal with the trial court, which held a hearing. At that hearing, the following testimony was presented.

Corporal Kevin P. Smith (Corporal Smith) of the Pennsylvania State Police testified that on April 30, 2009, around 1:00 a.m., he was conducting a routine patrol when he discovered Licensee's car running in the back of the parking lot of the Microtel Inn next to some dumpsters. Corporal Smith ran the vehicle registration and discovered that it belonged to Licensee, whom Corporal Smith had personally arrested twice before for DUI. Corporal

Smith called for backup, and Trooper Jonathan R. Gerken (Trooper Gerken) arrived.

Trooper Gerken testified that he approached the vehicle and saw that it was running with Licensee seated in the driver's seat but slouched over the passenger seat, appearing to be either unconscious or asleep. He knocked on the window, and Licensee awoke and opened the window. He smelled like alcohol, had glassy eyes and showed signs of impairment. Trooper Gerken asked Licensee to step out of the car to perform field sobriety tests. Licensee responded by yelling that the officers were "fags" who "were screwing each other before you came here" and attempted to re-enter the vehicle, at which time Trooper Gerken had to physically restrain him. Eventually, the officers had to restrain Licensee on the ground, hogtie him and Taser him because of his continued resistance. While on the ground, Licensee kicked Trooper Gerken in the chest and continued to yell obscenities at the officers.

Trooper Gerken further testified that Licensee was placed in the back of the squad car and brought to the Lehigh County Central Booking Center (Booking

---

1. 75 Pa.C.S. § 1547 provides, in relevant part:

    (a) General Rule.—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:

    (1) In violation of section ... 3802 (relating to driving under influence of alcohol or controlled substance).

    *    *    *

    (b) Suspension for refusal.—

    (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privileges of the person as follows:

    (i) Except as set forth in subparagraph (ii), for a period of 12 months.

    *    *    *

    (2) It shall be the duty of the police officer to inform the person that:

    (i) The person's operating privilege will be suspended upon refusal to submit to chemical testing.

Center) to be processed for DUI. Trooper Gerken advised Licensee that he would be given a blood test at the Booking Center. At the time of his testimony, Trooper Gerken did not specifically remember whether he had warned Licensee of the consequences of not cooperating with the blood test,[2] but stated that it was his usual practice for him to do so. An affidavit signed by Trooper Gerken dated April 30, 2009, was entered into evidence stating that he had given Licensee the required warnings concerning the consequences of refusing to submit to a chemical test, including the 12–month license suspension.

When they arrived at the Booking Center, Licensee was untied and handcuffed. While Trooper Gerken was escorting him into the Booking Center, Licensee head-butted him in the mouth, chipping his tooth, at which point the officers again had to tackle him to the ground in order to restrain him. Licensee was locked in a cell, and the Booking Center personnel never attempted to perform the blood test on him because of his continued combative behavior.

Licensee, at the time unrepresented, did not testify. He "argued," though, that he had neither driven the vehicle nor was he passed out or asleep but rather was merely in the vehicle to charge his cell phone. Furthermore, he argued that the police officers had never discussed a blood test and that they gave him no warnings concerning the consequences of refusing it.

■ Finding Corporal Smith and Trooper Gerken's testimony credible and holding

that Licensee was in actual physical control of his vehicle, was told he would have to submit to a blood test and was given the required warnings of the consequences of refusing the test, the trial court denied Licensee's appeal. It further held that Licensee's belligerent behavior constituted a refusal to take the test. Licensee then filed the instant appeal.[3]

■ On appeal, Licensee makes two contentions. First, he argues that the trial court erred in finding that he was in actual physical control of the vehicle because there was no objective evidence that he was ever operating the vehicle. Second, he contends that even if he was in actual physical control of the vehicle, the trial court erred in finding that he refused chemical testing because Trooper Gerken's testimony clearly established that he had failed to inform Licensee of the consequences of refusing the blood test.

In order to sustain a suspension of operating privileges under Section 1547, PennDOT must establish that the licensee:

(1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 445, 737 A.2d 1203, 1206 (1999). It is the

2. *See Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989), for the nature of the warnings required to be given to licensees who are asked to submit to chemical testing.

3. Our standard of review in a license suspension case is to determine whether the factual findings of the trial court are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. Questions of credibility are for the trial court to resolve. *Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).

first and fourth elements that are at issue in this appeal.

The test for whether an officer had reasonable grounds to believe that a licensee was operating or was in actual physical control of the movement of a vehicle while under the influence of alcohol is not very demanding, nor is it necessary for the officer to be correct in his belief. *Department of Transportation, Bureau of Driver Licensing v. Bird*, 134 Pa.Cmwlth. 305, 578 A.2d 1345, 1348 (1990). The reasonable grounds standard is satisfied if "a person in the position of the police officer, viewing the facts and circumstances as they appeared to him at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 558 Pa. at 446, 737 A.2d at 1207 (emphasis added). To determine if this standard is met, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running, and whether there was other evidence indicating that the motorist had driven the vehicle. *Banner*, 558 Pa. at 446–47, 737 A.2d at 1207. "[A]t the very least, there must be some objective evidence that the motorist exercised control over the movement of the vehicle at the time he was intoxicated." *Id.* at 448, 737 A.2d at 1207. It is immaterial whether alternative reasonable explanations for how the motorist came to be as he was found exist. *Bird*, 578 A.2d at 1348.

Generally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test. *See Riley v. Department of Transportation, Bureau of Driver Licensing*, 946 A.2d 1115 (Pa.Cmwlth.2008); *Vinansky v. Department of Transportation, Bureau of Driver Licensing*, 665 A.2d 860 (Pa.Cmwlth.1995); *Department of Transportation, Bureau of Driver Licensing v. Paige*, 156 Pa.Cmwlth. 600, 628 A.2d 917 (1993); *Polinsky v. Department of Transportation*, 131 Pa. Cmwlth. 83, 569 A.2d 425 (1990).[4] In *Vinansky* and *Polinsky*, the vehicles were parked in a parking lot with the engine running just as Licensee was doing in this case. These cases make it clear that the reasonable grounds test is satisfied when a police officer discovers, as here, a motorist slumped over in the driver's seat of the vehicle with the engine running while the vehicle is parked in a legal parking space in a parking lot. The unusual location of the vehicle next to the dumpsters at the far end of the parking lot, coupled with Corporal Smith's two previous arrests of Licensee for DUI, only serves to solidify the conclusion that the officers had reasonable grounds to believe that Licensee was operating or in actual physical control of the movement of the vehicle while under the influence of alcohol.

Licensee also contends that Trooper Gerken failed to warn him of the conse-

---

4. In *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 966 A.2d 640 (Pa. Cmwlth.2009), this court held that there were *not* reasonable grounds to believe the motorist operated or exercised actual physical control over his vehicle while under the influence of alcohol where the vehicle was found at 3:00 a.m. parked on the side of a street near a bar with the motorist asleep in the reclined driver's seat with the engine running. *Solomon* can be distinguished from the instant case because the trial court in *Solomon* found that there was credible testimony that it was common for bar patrons to park in the area, that the engine was running because it was cold and snowy outside, and that the totality of the circumstances showed that the motorist was just "sleeping off" his intoxication following a night at the bar and had not exercised control of the vehicle while intoxicated. Because the trial court had made these findings after considering competent evidence, we affirmed based on our deferential standard of review.

quences of failing to submit to chemical testing. PennDOT entered into evidence an affidavit signed by Trooper Gerken on the night of the incident affirming that he had provided all necessary chemical testing warnings to Licensee. Furthermore, Trooper Gerken testified that although he did not specifically recall warning Licensee, it was his habit to warn motorists arrested for DUI of the consequences of refusing a chemical test. Evidence of habit is admissible under the Rules of Evidence, regardless of whether it is corroborated.[5] Either the affidavit or Trooper Gerken's testimony alone would have been sufficient evidence for the trial court to have concluded that Licensee was warned of the consequences of refusing to submit to the blood test.

What Licensee really wants this court to do is to reweigh the evidence and determine that Trooper Gerken's affidavit and testimony were not credible while Licensee's argument that he was not warned was credible. This we will not do. Questions of credibility are for the trial court to resolve. *See Department of Transportation, Bureau of Driver Licensing v. Boucher*, 547 Pa. 440, 691 A.2d 450 (1997).[6]

Because the police officers had reasonable grounds to believe that Licensee operated or was in actual physical control of the vehicle while intoxicated and because Licensee was properly warned that the consequences of his refusal to submit to chemical testing would result in a 12-

month license suspension, the order of the trial court is affirmed.

### ORDER

AND NOW, this *5th* day of *March*, 2010, the order of the Court of Common Pleas of Lehigh County, dated July 20, 2009, is affirmed.

---

**5.** Pennsylvania Rule of Evidence 406 provides:

Evidence of habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

**6.** Additionally, the fact that the blood test was never actually administered is immaterial. Where, as here, a motorist makes it impossible or dangerous for the test to be administered through his actions, such actions are deemed a refusal. *See Hudson v. Department of Transportation*, 830 A.2d 594, 599–600 (Pa. Cmwlth.2003).