IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Hoffman                     :
                                    :
        v.                 : No. 176 C.D. 2018
                                     : Submitted: July 6, 2018
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,       :
              Appellant     :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI             FILED: August 6, 2018


The Department of Transportation, Bureau of Driver Licensing (PennDOT) appeals the order of the Court of Common Pleas of Dauphin County (trial court) sustaining the appeal of Eric Hoffman (Hoffman) and rescinding PennDOT's one-year suspension of Hoffman's operating privilege for failure to submit to chemical testing following his arrest for driving under the influence (DUI). For the reasons that follow, we affirm.


**I.**

On October 5, 2017, Officer Alex Wolf (Officer Wolf), a patrolman with the Susquehanna Township Police Department, observed Hoffman asleep in

the driver's seat of a minivan parked in a parking lot at approximately 4:30 a.m. While the vehicle was not running, Hoffman had the keys in his hand, the vehicle was parked sideways, Hoffman's eyes were bloodshot, and there was a strong smell of alcohol and an open beer can in the driver's side compartment. Believing that Hoffman had been in actual physical control of the movement of the vehicle while under the influence of alcohol, Officer Wolf placed Hoffman under arrest and transported him to Central Booking. Officer Wolf read PennDOT's DL-26 form to Hoffman and asked him to provide a blood sample, which he refused.

By official notice dated October 17, 2017, PennDOT notified Hoffman that his operating privilege was being suspended for a period of one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code[1] for his refusal to submit to chemical testing. Hoffman appealed the suspension and a *de novo* hearing was held before the trial court.

Officer Wolf testified that he was conducting standard business checks within his patrol area during the early morning hours of October 5, 2017. He stated that he has become familiar with what is considered "normal" within his patrol area through these checks and one of the businesses within his patrol area is the Boost Mobile on Walnut Street. Officer Wolf testified that there is typically one car parked in the Boost Mobile parking lot every night.

---

[1] 75 Pa.C.S. § 1547(b)(1)(i). That provision of the Code provides that an individual placed under arrest for DUI who refuses to submit to chemical testing will have his or her operating privilege suspended by PennDOT for a period of 12 months.

2

Officer Wolf testified that on the night in question, he drove by Boost Mobile toward the beginning of his shift and noticed nothing unusual, but when he drove by at 4:27 a.m., he noticed a second vehicle, a minivan, parked in the parking lot, which drew his attention. The following exchange took place with PennDOT's counsel regarding the timing of Officer Wolf's business checks:

> Q. Officer, let me stop you. Had you been by that area previous to that on that night?
>
> A. Yeah, I would have gone through early that night. It wouldn't have been documented. I don't know exactly what time or anything, but I go through the whole beat throughout my 12-hour shift. That was just the time that I go through and officially document it on my business checks report. [The minivan] wasn't there earlier in the night –
>
> Q. I'm sorry?
>
> A. It was not there earlier in the night, but I couldn't tell you – I couldn't testify as to what time I would have gone through and noticed that it wasn't there.
>
> Q. What time did your shi[f]t start that night?
>
> A. 7 p.m.
>
> Q. Is it your custom to do these business checks at any particular time in your shift?
>
> A. Yeah, I usually do them sometime between 1 a.m. and maybe like 5 a.m. It's typically a slower period in the shift and that would be the time if there was going to be some kind of mischief happening that I would locate it.

(Reproduced Record (R.R.) at 41a.)

3

Officer Wolf testified that upon pulling into the parking lot, he noticed that the minivan's driver side back sliding door was wide open and the vehicle was parked somewhat sideways, not straight within the painted white lines. Upon approaching the minivan, he observed an Amstel Light beer bottle in a cup holder in the back of the vehicle and Hoffman asleep in the driver's seat with his head hanging down towards his lap. The keys to the vehicle were in Hoffman's hands and an open Budweiser beer can was in the driver's compartment just to Hoffman's right. When Officer Wolf banged on the window of the minivan, Hoffman started yelling profanities, but once he opened his eyes, he became cordial. Officer Wolf testified that Hoffman's eyes were very bloodshot and when he opened the driver's door, a large waft of alcoholic beverage came in the officer's direction. Officer Wolf testified that Hoffman told him he had been drinking with friends in Baltimore earlier that day, but specifically denied that he was driving the vehicle.

Officer Wolf testified that he then placed Hoffman under arrest for DUI, explaining:

> The vehicle was parked somewhat sideways, not straight into the white painted lines, and through alcoholic beverage I could smell on Mr. Hoffman's person, open containers in the vehicle, the bloodshot eyes, the crookedness of the vehicle, and the oddity of the vehicle being there at that time and everything, I had assumed that – I came to the conclusion due to the totality of the circumstances that Mr. Hoffman drove the vehicle shortly before I was there to that location.

4

(R.R. at 41a.) Officer Wolf then transported Hoffman to Central Booking, read Hoffman the DL-26 form and asked him to submit to a blood sample. Officer Wolf testified that Hoffman did not deny that he had been drinking that night but denied driving and said he did not feel the blood sample was necessary.

On cross-examination, Officer Wolf acknowledged that the Boost Mobile where he found Hoffman inside the minivan shares a parking lot with Card Stadium Sports Collectible Store (Card Stadium). Officer Wolf was not aware that Hoffman was a co-owner of Card Stadium, but testified that Hoffman told him during the incident that he worked at Card Stadium and he lived approximately ten minutes away. Officer Wolf testified that he did not put his hand on the minivan's hood to check to see if the vehicle was still warm, and he could not testify as to when the minivan arrived in the parking lot that night.

James A. Pascotti (Pascotti) testified on behalf of Hoffman that they have been friends for years and on October 4, 2017, they attended a concert in Baltimore. Pascotti testified that they left the concert at approximately 11:00 or 11:30 p.m., and that he drove Hoffman's minivan back from the concert and parked it in the Boost Mobile parking lot at approximately 12:30 or 1:00 a.m. Pascotti testified that he remained in the parking lot for a little bit as Hoffman and the other man they were with wanted to hang out, but Pascotti left shortly thereafter.

The trial court found that, given the totality of the circumstances, Officer Wolf did not have reasonable grounds to believe that Hoffman was

operating or in actual physical control of the movement of the vehicle while under the influence of alcohol. Therefore, the trial court sustained Hoffman's appeal and rescinded PennDOT's suspension of his operating privilege. This appeal followed.[2]

## II.

To sustain a suspension of a licensee's operating privilege under Section 1547 of the Vehicle Code for refusal to submit to chemical testing,

> [Penn]DOT must establish that the licensee: (1) was arrested for driving under the influence by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that refusal might result in a license suspension.

*Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999) (citations omitted). Only the first element of this standard is at issue in this appeal. PennDOT argues that the trial court erred as a matter of law in determining that Officer Wolf did not have reasonable grounds and in substituting its judgment for that of Officer Wolf. We disagree.

---

[2] Our review in a license suspension case is limited to determining whether the findings of fact are supported by competent evidence and whether the trial court committed an error of law or an abuse of discretion. *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380, 383 n.3 (Pa. Cmwlth. 2010).

6

The standard of reasonable grounds to believe that a licensee was operating or was in actual physical control of the movement of a vehicle while under the influence is not very demanding, does not rise to the level of probable cause required for a criminal prosecution, and it is not necessary for the officer to be correct in his belief. *See Banner*, 737 A.2d at 1207; *Gammer v. Department of Transportation, Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010). "Reasonable grounds exist when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the [licensee] was operating the vehicle while under the influence of [alcohol]." *Banner*, 737 A.2d at 1207 (citing *DiPaolo v. Department of Transportation, Bureau of Driver Licensing*, 700 A.2d 569 (Pa. Cmwlth. 1997)). In other words, "[a]n officer's belief that the licensee was driving will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances supports the officer's belief." *Helt v. Department of Transportation, Bureau of Driver Licensing*, 856 A.2d 263, 266 (Pa. Cmwlth. 2004) (citation omitted).

In determining if this standard has been met,

> the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running, and whether there was other evidence indicating that the motorist had driven the vehicle. *Banner*, [] 737 A.2d at 1207. "[A]t the very least, there must be **some objective evidence** that the motorist exercised control over the movement of the vehicle at the time he was intoxicated." *Id.* [] at 1207. It is immaterial whether alternative reasonable explanations for how the motorist came to be as he was found exist. [*Department*

7

*of Transportation, Bureau of Driver Licensing v.*] *Bird*, 578 A.2d [1345,] 1348 [(Pa. Cmwlth. 1990)].

*Gammer*, 995 A.2d at 384. (Emphasis added.) *See also Marnik v. Department of Transportation, Bureau of Driver Licensing*, 145 A.3d 208, 212 (Pa. Cmwlth. 2016) (noting requirement of objective evidence that the licensee exercised control over the movement of the vehicle); *Sestric v. Department of Transportation, Bureau of Driver Licensing*, 29 A.3d 141, 144 (Pa. Cmwlth. 2011) (holding that there must be some other objective evidence establishing a time frame between the licensee's driving and his intoxication when an officer does not observe the licensee behind the wheel).

We agree with the trial court that, given the totality of the circumstances, there is no objective evidence that Hoffman exercised control over the movement of the vehicle while he was intoxicated. PennDOT stresses that there is objective evidence because Officer Wolf found Hoffman passed out in the driver's seat of the minivan with the keys in his hand, two open beer containers were in the vehicle, and it was parked crooked. While that gave Officer Wolf reasonable grounds to surmise that Hoffman had been drinking, that did not give him a basis to determine that he was operating the vehicle while drinking. To the contrary, when Officer Wolf arrived, the vehicle was not running, its lights were not on, the keys were not in the ignition and the back sliding door was open. Officer Wolf admitted that he did not check the hood of the vehicle to see if it was warm and could not testify as to when the vehicle arrived in the parking lot or how it got there, only that it arrived sometime between approximately 1:00 a.m. and his second business check at 4:27 a.m., a significantly large window of time. *See, e.g.,*

8

*Fierst v. Department of Transportation, Bureau of Driver Licensing*, 539 A.2d 1389 (Pa. Cmwlth. 1988) (finding a reasonable officer could not conclude that there were reasonable grounds for believing licensee was under the influence while driving, given one-hour time lapse between accident and when licensee was found drinking at his home).

This case is similar to that of *Banner*, where an officer was dispatched to check a suspicious vehicle parked along a roadway at approximately 4:20 a.m. Upon arriving at the scene, the officer found the licensee sleeping in a reclined position in the passenger seat of the vehicle. While the keys were in the ignition, the engine was not running, the lights were off, and no alcohol was found in the vehicle. When the officer tapped on the window, the licensee awakened and reached for the keys in the ignition. After viewing the totality of the circumstances, our Supreme Court determined that the information available to the officer fell short of the minimum evidence required to support a finding of reasonable grounds. 737 A.2d at 1207. The *Banner* court noted that the only evidence tending to show that the licensee had control over the vehicle's movement was its location parked alongside a road near a convenience store, and this was too tenuous a connection to provide reasonable grounds for believing the licensee was in actual physical control of the movement of the vehicle while intoxicated. *Id.* at 1208. The court noted, "[a] line must be drawn to distinguish circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated." *Id.* at 1208. *But see Gammer*, 995 A.2d at 384 (reasonable grounds existed where

9

officer found licensee in the driver's seat with the car running while parked in a parking lot); *Department of Transportation, Bureau of Driver Licensing v. Paige*, 628 A.2d 917 (Pa. Cmwlth. 1993) (reasonable grounds existed where officer found licensee slumped over steering wheel of his vehicle with the key in the ignition and parking lights on). In this case, all PennDOT showed was that Officer Wolf had a reasonable basis to believe that Hoffman was physically present in the motor vehicle while intoxicated; it did not present objective evidence that Officer Wolfe had a reasonable belief that he was driving the vehicle while intoxicated.

Because there was no objective evidence here to demonstrate that Hoffman exercised control over the movement of the vehicle at the time he was intoxicated, the trial court did not substitute its judgment for that of Officer Wolf and did not err in sustaining Hoffman's appeal.

Accordingly, the order of the trial court is affirmed.

_____
DAN PELLEGRINI, Senior Judge

10

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Eric Hoffman                    :
                                     :
        v.                 : No. 176 C.D. 2018
                                       :
Commonwealth of Pennsylvania,  :
Department of Transportation,   :
Bureau of Driver Licensing,     :
              Appellant    :

# **O R D E R**

AND NOW, this 6<u>th</u> day of <u>August</u>, 2018, the order of the Court of Common Pleas of Dauphin County in the above-captioned matter is hereby affirmed.

_____
DAN PELLEGRINI, Senior Judge