# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Bergenstock,                          :
                    Appellant     :
                                   :
             v.                        :    No. 69 C.D. 2023
                                   :    ARGUED: December 4, 2023
Commonwealth of Pennsylvania,               :
Department of Transportation,               :
Bureau of Driver Licensing                  :


BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE LORI A. DUMAS, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


**OPINION BY**
**SENIOR JUDGE LEADBETTER**              **FILED: February 20, 2024**


       Licensee, Joshua Bergenstock, appeals from an order of the Court of Common Pleas of Northumberland County denying his appeal from the suspension of his operating privilege for 18 months under Section 1547(b)(1)(ii)(A) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(ii)(A),[1] and from the lifetime disqualification of his commercial driving privilege under Section 1611(c) of the Code, 75 Pa.C.S. § 1611(c),[2] by the Department of Transportation (DOT), Bureau of Driver Licensing. DOT's actions were the result of Licensee's arrest for driving under the influence (DUI) two nights in a row and his refusal of chemical testing both times. We affirm the trial court's order denying Licensee's appeal from the 18-month suspension of

---

[1] An 18-month suspension is warranted when a licensee commits a second violation of Section 1547. 75 Pa.C.S. § 1547(b)(1)(ii)(A).

[2] A lifetime disqualification is warranted when a person is the subject of two or more reports of test refusals as specified in Section 1613 of the Code, 75 Pa.C.S. § 1613, arising from two or more separate and distinct incidents. 75 Pa.C.S. § 1611(c).

his operating privilege but reverse the order denying his appeal from the lifetime disqualification of his commercial driving privilege.

The relevant facts are undisputed. At approximately 12:51 a.m. on July 31, 2022, Corporal Daniel Zettelmoyer[3] of the Milton Police Department was dispatched to Speedy's Place following the report of a truck with its engine running in the bar's parking lot with a man inside who appeared to be intoxicated. Upon arrival, Zettelmoyer located a black truck with its engine running and Licensee seated in the driver's seat, slumped over the center console. Zettelmoyer identified Licensee as the subject of the previous night's DUI arrest when Zettelmoyer served as the assisting officer. After Zettelmoyer was unable to rouse Licensee, a second police officer, Officer Noviello, arrived on the scene and roused Licensee by pounding on the vehicle's window. Following Licensee's exit from the truck, Zettelmoyer observed that Licensee's face was flushed, his eyes were bloodshot and glassy, his speech was slow and slurred, and he emitted an odor of alcohol. After administering several field sobriety tests, Zettelmoyer placed Licensee under arrest for suspicion of DUI and transported him to the hospital for a blood draw.

At the hospital, Zettelmoyer read Licensee the blood test warnings from side one of the DL-26B form advising him of the Implied Consent Law.[4] In pertinent part, the consequence portion provides: "If you refuse to submit to the blood test, your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of [DUI], your operating privilege will be suspended for up to 18 months." Ex. C-1, Sub Ex. 2, DL-26B Form;

---

[3] As evident from the DL-26B form, the correct spelling of the officer's name is Zettelmoyer, not Zettlemoyer. Ex. C-1, Sub Ex. 2, DL-26B Form; Reproduced R. (R.R.) at 32a.

[4] Section 1547 of the Code is commonly referred to as the Implied Consent Law and permits chemical testing of drivers under certain circumstances.

2

Reproduced R. (R.R.) at 32a.  Notably, Zettelmoyer did not read side two of the DL-26B form setting forth the blood testing warnings pertaining to the potential loss of a licensee's commercial driving privilege.  When Licensee refused to answer any questions or sign the form, Zettelmoyer recorded a refusal.

Subsequently, DOT sent Licensee a notice advising him that it was suspending his operating privilege for 18 months pursuant to Section 1547 and a second notice advising him that it was disqualifying his commercial driving privilege for a lifetime pursuant to Section 1611.  Licensee appealed from both notices and the trial court conducted one *de novo* hearing.[5]  At that time, DOT submitted into evidence two packets:  Exhibit C-1 (suspension of operating privilege for 18 months) and Exhibit C-2 (lifetime disqualification of commercial driving privilege).  In addition, DOT presented the testimony of Zettelmoyer.  Neither the second officer nor Licensee testified.

The trial court denied Licensee's statutory appeals of both the suspension and the disqualification.  With respect to the suspension, the trial court determined that DOT met its burden of proving that Zettelmoyer had reasonable grounds to believe that Licensee was operating or in actual physical control of the truck.  The trial court concluded that the disqualification was mandated by statute.  Licensee's appeal to this Court followed.

### 18-Month Suspension of Operating Privilege

To sustain a suspension of a licensee's operating privilege under Section 1547, DOT has the burden, pertinent here, to prove that the licensee "was

---

[5] The trial court heard the two matters as one appeal: *Joshua Bergenstock v. Commonwealth of Pennsylvania, Department of Transportation* (C.C.P. Northumberland Cnty., No. CV-2022-1364, filed Jan. 11, 2023).  At the hearing, counsel for DOT acknowledged that the hearing entailed both matters.  Nov. 9, 2022 Hearing, Notes of Test. (N.T.) at 3; R.R. at 4a.  Before this Court, Licensee filed one notice of appeal pertaining to both matters.

3

arrested for [DUI] by a police officer who had reasonable grounds to believe that the licensee was operating or was in actual physical control of the movement of the vehicle while under [the] influence of alcohol[.]" *Banner v. Dep't of Transp., Bureau of Driver Licensing*, 737 A.2d 1203, 1206 (Pa. 1999). Whether reasonable grounds exist is a question of law subject to our plenary review. *Id.* at 1207. The test for reasonable grounds is not very demanding, and it is not necessary for the police officer to be correct in his or her belief. *Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990). Reasonable grounds are established when a "police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the motorist was operating the vehicle while under the influence of intoxicating liquor." *Banner*, 737 A.2d at 1207. "It is immaterial whether alternative reasonable explanations for how the motorist came to be as he was found exist." *Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) (citing *Bird*, 578 A.2d at 1348). Here, although Zettelmoyer testified that Licensee told the officer that he had been drinking but not driving, it was clear that the officer believed to the contrary since the officer proceeded to arrest him for DUI.

Although there is no bright line for determining reasonable grounds, "[g]enerally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test." *Gammer*, 995 A.2d at 384. In *Gammer*, we concluded that "the reasonable grounds test is satisfied when a police officer discovers . . . a motorist slumped over in the driver's seat of the vehicle with the engine running while the vehicle is parked in a legal parking space in a parking lot." *Id*. There is no requirement that an officer

witness a licensee operating a vehicle. *Walkden v. Dep't of Transp., Bureau of Driver Licensing*, 103 A.3d 432 (Pa. Cmwlth. 2014).

Having assisted another officer with Licensee's DUI arrest the previous night, Zettelmoyer recognized Licensee upon encountering him the very next night in the parking lot of a bar. Nov. 9, 2022 Hearing, Notes of Test. (N.T.) at 9; R.R. at 10a. Initially, Licensee was unable to respond to efforts to rouse him. He was seated in the driver's seat of his truck with the engine running, slumped over the center console, and exhibited indicia of having overly imbibed alcohol. Accordingly we conclude that Zettelmoyer had reasonable grounds to believe that Licensee was operating or was in actual physical control of the movement of his truck while under the influence of alcohol. Consequently, we affirm the trial court's order denying Licensee's appeal of the 18-month suspension under Section 1547 of the Code.

### Lifetime Disqualification of Commercial Driving Privilege

Section 1613 of the Code, "Implied consent requirements for commercial motor vehicle drivers," provides:

> **(a) Implied consent.**--A person who drives a commercial motor vehicle in this Commonwealth is deemed to have given consent to take a test or tests of the person's breath, blood or urine for the purpose of determining the person's alcohol concentration or the presence of other controlled substances.
>
> **(b) Tests ordered by police officer.**--A test or tests may be administered at the direction of a police officer who, after stopping or detaining the commercial motor vehicle driver, has reasonable grounds to believe that the driver was driving a commercial motor vehicle while having any alcohol in his system.
>
> **(c) Warning against refusal.**--A person requested to submit to a test as provided in subsection (a) shall be warned by the police officer requesting the test that refusal

5

to submit to the test will result in the person's being disqualified from operating a commercial motor vehicle under subsection (e).[6]

**(d) Report on test refusal.--**If the person refuses testing, the police officer shall submit a sworn report to [DOT] certifying that the test was requested pursuant to subsection (a) and that the person refused to submit to testing.

**(d.1) Disqualification for refusal.--**Upon receipt of a report of test refusal, [DOT] shall disqualify the person who is the subject of the report for the same period as if [DOT] had received a report of the person's conviction for violating one of the offenses listed in section 1611(a) (relating to disqualification). A person who is disqualified as a result of a report of test refusal that originated in this Commonwealth shall have the same right of appeal as provided for in cases of suspension. Where the report of test refusal originated from another state or other foreign jurisdiction, the review of a court on an appeal from a disqualification under this subsection shall be limited to whether [DOT] has received a report of refusal and whether the person has successfully established one of the following defenses:

> **(1)** The person being disqualified is not the one identified in the report.

> **(2)** The person has successfully contested the report in the jurisdiction from which it originated.

> **(3)** [DOT] has erred in determining the length of the disqualification to be imposed as a result of the report of test refusal.

**(d.2) Limitation on noncommercial motor vehicle-based refusal.--**A report of test refusal which occurred prior to the effective date of this subsection and which did not involve a commercial motor vehicle shall not be considered by [DOT] for purposes of applying a disqualification pursuant to this section.

---

[6] Subsection (e) was deleted and the warning section was not updated. Our Supreme Court has ruled that Section 1611(e)'s lifetime disqualification was not rationally related to protecting highway safety. *Shoul v. Dep't of Transp., Bureau of Driver Licensing*, 173 A.3d 669 (Pa. 2017).

**(d.3) Definition.--**As used in this section, the term "report of test refusal" shall mean the following:

**(1)** A report of a police officer submitted to [DOT] that a person refused to submit to testing requested under this section.

**(2)** A notice by a police officer to [DOT] of a person's refusal to take a test requested pursuant to section 1547 (relating to chemical testing to determine amount of alcohol or controlled substance) where the person was a commercial driver at the time relevant to the refusal.

**(3)** Any document, including an electronic transmission, submitted to [DOT] from a court of competent jurisdiction indicating that a person was convicted of an offense that involves the refusal to submit to testing for alcohol or controlled substances where the person was a commercial driver at the time of the violation.

**(4)** Any document, including an electronic transmission, submitted to [DOT] from a court, administrative tribunal, administrative agency or police officer or other agent of another state or other foreign jurisdiction indicating that a person refused to take a test requested to aid enforcement of a law against driving while under the influence of alcohol or a controlled substance where the person was a commercial driver at the time relevant to the refusal.

**(e) Disqualification for refusal.--**(Deleted by amendment).

**(f) Appeal of disqualification.--**(Deleted by amendment).

75 Pa.C.S. § 1613(a)-(f) (footnote added).

Licensee contends that the lifetime disqualification should be set aside because Zettelmoyer never advised him that he would be disqualified for life from driving a commercial vehicle if he refused to submit a blood sample. We agree.[7]

DOT has misinterpreted the Code and incorrectly determined which drivers are entitled to the blood test warning prescribed by the General Assembly in Section 1613(c). DOT asserts that Zettelmoyer was required to read only side one of the DL-26B form because Licensee was arrested in a personal vehicle. Had Licensee been arrested in a commercial vehicle, DOT contends that the officer would have been required to read both sides of the form. In addition, DOT argues that both sides of the form would have been required for a driver who lacked a commercial driver's license but was arrested in a commercial vehicle.

As an initial matter, Section 1613 does not require that the driver be driving a commercial vehicle to be entitled to a warning that a refusal will result in disqualification from operating a commercial vehicle. In pertinent part, subsection (a) provides that "[a] person who drives a commercial motor vehicle in this Commonwealth is deemed to have given consent to take a test or tests . . . ." 75 Pa.C.S. § 1613(a). Subsection (c) provides, in relevant part, that "[a] person requested to submit to a test as provided in subsection (a) shall be warned by the

---

[7] Licensee also argues that the disqualification should be set aside because he was not a commercial driver at the time of his arrest such that the lifetime disqualification should not have been triggered. Although we ultimately rule in favor of Licensee on the lifetime disqualification, we disagree that he was not a commercial driver. DOT submitted evidence that Licensee became a "CDL holder" on October 23, 2021, and continued to hold a CDL until September 7, 2022. Ex. C-2, Sub Ex. 5, Sept. 30, 2022, CDL Holder Date Span Inquiry List; R.R. at 53a. The arrest at issue occurred on July 31, 2022. A CDL holder is defined as "[a] person who has been issued a commercial driver's license or a commercial driver's learner's permit." Section 1603 of the Code, 75 Pa.C.S. § 1603. The disqualification applies both to a person who held a CDL at the time of the disqualifying offenses and to one who operated a commercial vehicle at the time of the offense. *Sondergaard v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 994, 998 (Pa. Cmwlth. 2013). Accordingly, Licensee's argument is without merit.

police officer requesting the test that refusal to submit to the test will result in the person's being disqualified from operating a commercial motor vehicle . . . ." 75 Pa.C.S. § 1613(c). Subsection (a)'s person "who drives a commercial vehicle in this Commonwealth" is not the same as one who is driving a commercial vehicle in this Commonwealth at the time of his arrest. Notably, the General Assembly did not employ the latter phrase. In addition, the General Assembly's use of the phrase "where the person was a commercial driver at the time relevant to the refusal" in 75 Pa.C.S. § 1613(d.3) similarly does not equate to a requirement that the driver be driving a commercial vehicle at the time of the DUI arrest in order to be entitled to the warning. Rather, reading the statutory scheme as a whole, we believe that the phrase "person who drives a commercial vehicle in this Commonwealth" refers to CDL holders, the class of persons to whom the lifetime disqualification applies.

Taken to its logical conclusion, DOT's interpretation of Section 1613 renders an absurd result whereby a person without a commercial driver's license but driving a commercial vehicle would merit an enhanced warning but not a person with a commercial driver's license but driving a personal vehicle. As noted above, the lifetime disqualification applies "to CDL holders who have committed the disqualifying offenses, regardless of whether the motor vehicle operated at the time of the offenses was commercial or personal." *Sondergaard v. Dep't of Transp., Bureau of Driver Licensing*, 65 A.3d 994, 998 (Pa. Cmwlth. 2013). Accordingly, it is of no moment that Licensee was driving a personal vehicle at the time of his arrest.

In summary, DOT's position is inconsistent with a plain reading of Section 1613 pursuant to which Zettelmoyer was required to provide the more detailed warning to Licensee as a commercial driver regardless of the vehicle he was in at the time of his DUI arrest. While it is true that Section 1611(c) is a remedial

9

law, enacted to reduce or prevent commercial motor vehicle accidents, fatalities, and injuries by disqualifying commercial drivers who have committed certain serious traffic violations or other specified offenses,[8] the Code must be followed to ensure that commercial drivers, especially those who make their living from driving commercial vehicles, receive the warning that the General Assembly intended. We emphasize that the Code rules over any language in DOT's forms providing contrary instructions to police officers.

Accordingly, having determined that Zettelmoyer was required to advise Licensee that he would be subject to a lifetime disqualification of his commercial driving privilege if he refused to submit a blood sample, we need not address the potential unconstitutionality of the lifetime disqualification under *Birchfield v. North Dakota*, 579 U.S. 438 (2016).

### Conclusion

We affirm the trial court's order denying Licensee's appeal from the 18-month suspension of his operating privilege but reverse the order denying his appeal from the lifetime disqualification of his commercial driving privilege.

 

**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita

---

[8] *Sondergaard*, 65 A.3d at 997.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Joshua Bergenstock,                         :
                    Appellant               :
                                            :
        v.                                  :   No. 69 C.D. 2023
                                            :
Commonwealth of Pennsylvania,               :
Department of Transportation,               :
Bureau of Driver Licensing                  :


# **O R D E R**


AND NOW, this 20th day of February, 2024, the order of the Court of Common Pleas of Northumberland County is AFFIRMED as to the suspension of Appellant's operating privilege for 18 months and REVERSED as to the lifetime disqualification of his commercial driving privilege.


_____
**BONNIE BRIGANCE LEADBETTER,**
President Judge Emerita