IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Feben Habte-DeJesus              :
                                 :
         v.                  :
                                 :
Commonwealth of Pennsylvania,   :
Department of Transportation,     :
Bureau of Driver Licensing,       :   No. 1478 C.D. 2021
              Appellant   :   Submitted: June 3, 2025

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
               HONORABLE MATTHEW S. WOLF, Judge
               HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON[1]             FILED: October 17, 2025

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (Department) appeals from a December 13, 2021 order of the Court of Common Pleas of Philadelphia County (Common Pleas) that reversed a driver's license suspension imposed by the Department against Feben Habte-DeJesus (Licensee). After thorough review, we conclude that the Department failed to sustain its burden of demonstrating that the police had a reasonable belief that Licensee had been driving, operating, or in control of the movement of her motor vehicle while intoxicated. Accordingly, we affirm Common Pleas' order.

## I. Background

At 1:00 a.m. on October 5, 2019, a police officer noticed Licensee asleep in her vehicle, which was legally parked in a parking space in the 3600 block of Chestnut Street in Philadelphia with the motor running. Reproduced Record (RR)

---

[1] This opinion was reassigned to the author on August 15, 2025.

at 33a & 37a-38a. When questioned, Licensee stated she had been at a bar about four blocks from where her car was parked. *Id.* at 35a. Based on his observation of indicia of intoxication, the officer arrested Licensee for driving under the influence of alcohol (DUI). *Id.* The arresting officer testified at a *de novo* hearing before Common Pleas that he did not know how long Licensee's vehicle had been parked in the parking space before he approached her. *Id.* at 36a.

At the Common Pleas hearing, Licensee testified that she requested a breath test instead of a blood test, but the police officer on duty for chemical testing on the night in question did not recall hearing her make such a request. RR at 43a & 52a-53a. In any event, it is undisputed that Licensee refused to consent to a blood draw. *Id.* at 41a. Nonetheless, Common Pleas sustained Licensee's appeal of her license suspension. RR at 82a. In its subsequent opinion pursuant to Rule 1925(a)(1) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(a)(1),[2] Common Pleas explained that its decision was based on the facts that Licensee's vehicle was legally parked, that there was no alcohol in the vehicle and no odor of alcohol on Licensee's person, and that there was no evidence regarding the performance of field sobriety tests prior to Licensee's arrest. RR at 82a.

---

[2] Rule 1925(a)(1) requires, in pertinent part, that

> upon receipt of the notice of appeal, the judge who entered the order giving rise to the notice of appeal, if the reasons for the order do not already appear of record, shall . . . file of record at least a brief opinion of the reasons for the order, or for the rulings or other errors complained of . . . .

Pa.R.A.P. 1925(a)(1).

## II. Issue

On appeal,[3] the Department argues that the arresting officer had reasonable grounds to believe that Licensee was driving, operating, or in actual physical control of the movement of her vehicle while under the influence of alcohol. The Department bases its argument only on the officer's observation of indicia of intoxication. In other words, the Department argues only that there were reasonable grounds to believe Licensee was intoxicated. The Department does not argue that there were reasonable grounds to believe that Licensee was driving, operating, or in actual physical control of the movement of her vehicle.

## III. Discussion

Section 1547(a) and (b) of the Vehicle Code[4] provides, in pertinent part:

(a) General rule.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance *if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle* in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relating to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock).

---

[3] An appellate court's review in a license suspension case is limited to determining whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *Bold v. Dep't of Transp., Bureau of Driver Licensing*, 320 A.3d 1185, 1191 (Pa. 2024) (*Bold II*).

[4] 75 Pa.C.S. §§ 101 - 9805.

3

. . . .

(b) Civil penalties for refusal.--

(1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person . . . .

75 Pa.C.S. § 1547(a) & (b) (emphasis added).  At issue in this appeal is whether the police had reasonable grounds to believe Licensee had been "driving, operating or in actual physical control of the movement of" her vehicle prior to her interaction with police.  *Id.*  Thus, the meaning of "driving, operating or in actual physical control of the movement of a vehicle" is critical to the disposition of this appeal.

Recently, in *Bold v. Department of Transportation, Bureau of Driver Licensing*, 320 A.3d 1185 (Pa. 2024) (*Bold II*),[5] the Pennsylvania Supreme Court considered the meaning of Section 1547(a) in an analogous situation.  In *Bold II*, the licensee was found unconscious behind the wheel of his vehicle, which was legally parked in a mall parking lot near a bar.  *Id.* at 1187.  It was a cold night; the engine was running and the headlights were on.  *Id.*  Bold admitted he had been drinking in the nearby bar but explained that he had intended to sleep in his car until he was sober enough to drive home safely.  *Id.*  There was no evidence that he had driven or moved his vehicle while he was intoxicated.  *Id.* at 1188.  He refused to consent to a blood draw, and his license was subsequently suspended.  *Id.* at 1187.

In *Bold II*, as here, the issue was whether the police had reasonable grounds to believe that the licensee had been operating or in actual physical control of the movement of his vehicle.  *Bold II*, 320 A.3d at 1188.  Observing that a "muddle

---

[5] In *Bold II*, our Supreme Court reversed this Court's decision in *Bold v. Department of Transportation, Bureau of Driver Licensing*, 285 A.3d 970 (Pa. Cmwlth. 2022) (*en banc*) (*Bold I*).

4

of case law" existed in courts' applications of the language of Section 1547(a), our Supreme Court "underscore[d] the importance of allowing statutes, not layers of case law, to determine outcomes in matters of statutory interpretation." *Id.* at 1191.

The Supreme Court then analyzed the language of Section 1547(a). First, the Court observed that "'[o]perate' plainly encompasses 'driving,' and arguably subsumes 'actual physical control of the movement of a vehicle' as well. Once a car moves under a person's control, it clearly has been operated[.]" *Bold II*, 320 A.3d at 1194. Stated otherwise, "'[o]perate' has a plain meaning that all but necessarily enfolds the other two terms" and thereby "creates textual surplusage on any plausible account." *Id.* at 1195. The Court then reasoned that

> applying a plain language approach just to the word "operates" . . . raises the prospect of an absurd result. If any actuation of a car constitutes operating that vehicle, then any movement of its machinery, simple or complex, qualifies – from opening the door to rolling down the window, turning on the radio, or even opening the glove compartment.[] Nothing could be more absurd than subjecting a driver to chemical testing – and, for that matter, conviction of DUI – simply for lowering a window in the heat of summer.
>
> [I]f we interpret Section 1547, and by extension Section 3802, [75 Pa.C.S. § 3802 (prohibiting drunk driving),] in a way that necessarily proscribes "sleeping it off" on a cold January night in a car running to keep the interior warm, we encourage hypothermia – or the sort of bad decision-making those sections exist to deter.
>
> The Commonwealth is trying to encourage intoxicated people to "sleep it off" before attempting to drive, yet it wants us to punish [a licensee] for doing just that. The case is only one example of the illogical and inconsistent results we would see if this Court were to adopt a *per se* rule that found a defendant guilty of drunk driving for merely starting his car. Under such a mechanical

5

application, if [a licensee] had left the bar to call a cab using a cellular phone in his car, and needed to start the car to power the phone, the Commonwealth could charge him with drunk driving. This result would punish an individual for attempting to comply with the law.

*Id.* at 1195-96 (footnotes omitted) (quoting *Commonwealth v. Byers*, 650 A.2d 468, 471 (Pa. Super. 1994)). The Court then reiterated its holding in *Banner v. Department of Transportation, Bureau of Driver Licensing*, 737 A.2d 1203 (Pa. 1999), stating:

As in *Banner*, we again hold:

In determining whether an officer had reasonable grounds to believe that a motorist was in actual physical control of a vehicle, the court must consider the totality of the circumstances, including the location of the vehicle, whether the engine was running and whether there was other evidence indicating that the motorist had driven the vehicle at some point prior to the arrival of the police.[]

This test must be applied in a fashion that honors the line we cited "distinguish[ing] circumstances where a motorist is driving his vehicle while under the influence of alcohol, which the statute is intended to prevent, and circumstances where a motorist is physically present in a motor vehicle after becoming intoxicated."[]

*Bold II*, 320 A.3d at 1200 (footnotes omitted) (quoting *Banner*, 737 A.2d at 1207-08).

We conclude that our Supreme Court's holding in *Bold II* is controlling here.[6] Licensee was legally parked in a parking space in downtown Philadelphia

---

[6] We observe that the Department's brief cites decisions predating *Bold II*, including this Court's decision in *Bold I*, which our Supreme Court reversed in *Bold II*. *See* Dep't Br. at 20-22 (first citing *Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) (reasonable grounds where vehicle was parked next to motel dumpsters with

only about four blocks from the bar she had visited. Under the totality of the circumstances, there was nothing to indicate the Licensee had been driving her vehicle while under the influence of alcohol, rather than simply being physically present in a motor vehicle after becoming intoxicated. *See Bold II*, 320 A.3d at 1200.

Notably, Common Pleas based its analysis on the absence of indicia of intoxication and did not specifically opine on whether Licensee was driving, operating, or in actual physical control of the movement of her vehicle. *See* RR at 108a. On appeal, the Department similarly argues that there were reasonable grounds to believe Licensee was intoxicated. This Court, however, need not rely on the reasoning of Common Pleas, but rather, "may affirm an order for any reason, regardless of [Common Pleas'] rationale, so long as the basis for our decision is clear on the record." *Reardon v. Dep't of Transp., Bureau of Driver Licensing*, 935 A.2d

engine running at 1:00 a.m.; opining that "[g]enerally, the motorist's presence in the driver's seat of the vehicle with the engine on has been deemed sufficient to satisfy the reasonable grounds test . . ." even "while the vehicle is parked in a legal parking space in a parking lot"); then citing *Vinansky v. Dep't of Transp., Bureau of Driver Licensing*, 665 A.2d 860 (Pa. Cmwlth. 1995) (reasonable grounds where vehicle was parked in a parking lot with engine running); then citing *Polinsky v. Dep't of Transp.*, 569 A.2d 425, 427 (Pa. Cmwlth. 1990) (reasonable grounds where licensee was inside vehicle was parked beside restaurant pickup window with lights on and ignition in "on" position); then citing *Bold I*; then citing *Riley v. Dep't of Transp., Bureau of Driver Licensing*, 946 A.2d 1115, 1120-21 (Pa. Cmwlth. 2008) (reasonable grounds where licensee was in driver's seat of vehicle parked by the side of a road with headlights on and engine running); then citing *Dep't of Transp., Bureau of Driver Licensing v. Paige*, 628 A.2d 917 (Pa. Cmwlth. 1993) (reasonable grounds where driver was slumped over the steering wheel with the key in the ignition and the parking lights on); and then citing *Dep't of Transp., Bureau of Traffic Safety v. Farner*, 494 A.2d 513 (Pa. Cmwlth. 1985) (first impression case regarding actual physical control of the movement of a motor vehicle; reasonable grounds where the driver was parked in the driving lane 28 inches from the curb with the engine running and his foot on the brake, although the transmission was in park)). Some of the cited decisions may be distinguishable because, as the above parenthetical descriptions indicate, it is not clear whether some of them involved vehicles that were legally parked, e.g., beside a restaurant pickup window or along the side of the road. Nonetheless, to the extent those decisions can be read as concluding that control of a vehicle's movement could be properly inferred merely from the licensee's presence behind the wheel of a legally parked car while intoxicated, they are no longer valid in light of *Bold II*.

7

63, 64 n.1 (Pa. Cmwlth. 2007) (citing *Guy M. Cooper, Inc. v. E. Penn Sch. Dist.*, 903 A.2d 608 (Pa. Cmwlth. 2006)).  Because we conclude that the record fails to contain competent or substantial evidence to sustain the Department's burden to establish that Licensee was driving, operating, or in actual physical control of the movement of her vehicle within the meaning of Section 1547(a) as construed by our Supreme Court in *Bold II*, we affirm Common Pleas' order.

## IV. Conclusion

Based on the foregoing discussion, the order of the Court of Common Pleas is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Feben Habte-DeJesus                    :
                                       :
            v.                         :
                                       :
Commonwealth of Pennsylvania,          :
Department of Transportation,          :
Bureau of Driver Licensing,            :    No. 1478 C.D. 2021
                        Appellant      :

# **O R D E R**

AND NOW, this 17th day of October, 2025, the order of the Court of Common Pleas of Philadelphia County dated December 13, 2021 is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Feben Habte-DeJesus | : | |
| | : | |
| v. | : | |
| | : | |
| Commonwealth of Pennsylvania, | : | |
| Department of Transportation, | : | |
| Bureau of Driver Licensing, | : | No. 1478 C.D. 2021 |
| Appellant | : | Submitted: June 3, 2025 |

BEFORE:  HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE MATTHEW S. WOLF, Judge
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

DISSENTING OPINION BY
JUDGE WOLF                                            FILED:  October 17, 2025

The Majority, as did the Court of Common Pleas of Philadelphia County (trial court) below, establishes a new standard for licensees in driving under the influence (DUI) suspension cases.  That is, where police officers have reasonable grounds to believe that a licensee is driving under the influence, the Court may later give the licensee the benefit of the doubt.  This new "benefit of the doubt" standard is neither supported by the law nor supported by precedent.

This is a case where police officers came upon Feben Habte-DeJesus (Licensee) sleeping behind the wheel of a running vehicle in a parking spot where the Licensee appeared heavily under the influence. After waking up, Licensee indicated she had come from a bar four blocks away.  There are two reasonable scenarios presented.  One, that Licensee left the bar intoxicated and walked four

blocks to her parked car, turned it on, and fell asleep. The other, that she drove from the bar intoxicated, parked the car, and fell asleep. Here, the Majority gives Licensee the benefit of the doubt that she had not operated the vehicle. That presents a new standard under the law. Because I differ in my opinion on this matter from my learned colleagues as well as the well-respected trial court below, I respectfully dissent.

More specifically, during the suspension appeal hearing before the trial court, Officer Kincaid testified that he made contact with Licensee at 1:00 a.m. on October 5, 2019, when he noticed her asleep behind the wheel of a running silver 2015 Toyota Camry parked legally on the 3600 block of Chestnut Street in Philadelphia. Believing that she may be having a medical episode, Officer Kincaid radioed for rescue services. While awaiting rescue services, Officer Kincaid entered the passenger side of the vehicle to turn it off. Officer Kincaid further testified that he spoke to Licensee, and noticed that she had "heavily-slurred, incoherent speech" and "watery, glossy eyes." Reproduced Record (R.R.) at 34a. He also testified that she was "unable to state where she was, where she was going, and where she had been." *Id.* When asked whether he had detected the odor of any illicit substance, Officer Kincaid testified that he had not. Officer Kincaid testified that he asked Licensee if she had consumed any alcohol but did not recall her response. However, he did recall that Licensee stated she had come from "the Landmark, which is a bar roughly four blocks away" from where he had encountered her. *Id.* at 35a. Officer Kincaid testified that based on everything he had seen and observed, he believed Licensee was under the influence of alcohol and proceeded to arrest her on suspicion of DUI.

In these kinds of cases, the question before the Court[1] is whether the circumstances described above gave the officer "reasonable grounds to believe" that Licensee was "operating or in actual physical control of the movement" of her vehicle at the time of, or before, her interaction with the officer. *Bold v. Dep't of Transp., Bureau of Driver Licensing*, 320 A.3d 1185, 1188 (Pa. 2024) (*Bold II*). "Driver's license suspension proceedings are civil, not criminal in nature, and the Department must prove the elements of its case by a preponderance of the evidence, and not beyond a reasonable doubt." *Pettit v. Dep't of Transp., Bureau of Driver Licensing*, 315 A.3d 268, 278-79 (Pa. Cmwlth. 2024) (citing *Yi v. Dep't of Transp., Bureau of Driver Licensing*, 646 A.2d 603 (Pa. Cmwlth. 1994)).

Thus, the Court need not "definitively conclude" operation under the influence as the trial court alluded to. And in light of this burden, where the test for reasonable grounds is not very demanding, and it is not necessary for the police officer to be correct in his or her belief,[2] the Majority's contention that "there was nothing to indicate the Licensee had been driving her vehicle while under the influence of alcohol" is troubling because it ignores that Ms. DeJesus was apparently intoxicated, was behind the wheel of a vehicle which was on, and said that she had come from a bar. The Bureau does not have the burden to show "definitively" that the licensee had been driving her vehicle while under the influence. Rather, the

---

[1] The trial court stated the issue before the court: "The issue is whether the police officer had reasonable grounds to believe that Ms. DeJesus had been operating her vehicle under the influence of alcohol." Rule 1925(a) Opinion at 3. After reviewing the facts, the trial court concluded: "[N]o reasonable person could have definitively concluded that the motorist was operating the vehicle under the influence of alcohol." *Id.* at 4. DUI is not limited to the use of alcohol and while this driver appeared impaired to the officer, the officer did not smell alcohol, R.R. 34a, and even more notable, Ms. DeJesus, while refusing a blood draw, offered to give a breath test, R.R. 52a.

[2] *Dep't of Transp., Bureau of Driver Licensing v. Bird*, 578 A.2d 1345, 1348 (Pa. Cmwlth. 1990).

Bureau only has the burden to show that the arresting officer had reasonable grounds to believe that licensee had operated her vehicle while under the influence—this distinction is important. Here, there are objective indicia to support the reasonableness of the officer's belief, which amounts to seeing a passed-out driver exhibiting intoxication who says she came from a bar.

Unlike the trial court and the Majority, I would hold that Officer Kincaid was reasonable in his belief that Licensee had recently been in actual control of her motor vehicle (beyond simply sitting in the driver's seat of the parked vehicle with the engine running). We can distinguish the instant case from *Bold II* and its progeny. In *Bold II*, the licensee was encountered by police in the driver's seat of his vehicle, which was parked and running in the parking lot directly adjacent to the establishment in which he admitted to drinking. *Bold II*, 320 A.3d at 1187. Recognizing he was too intoxicated to drive safely, the licensee chose to sleep in his vehicle in the parking lot with the engine running for heat (it was a cold night in January) until he was fit to drive home safely and legally. *Id.*[3]

In contrast to the factual circumstances in *Bold II*, Licensee in the instant matter was encountered four blocks away from the bar which she stated she had come from. One reasonable interpretation is that she *drove* from the bar to the location where Officer Kincaid encountered her parked vehicle where she was passed out. While there are other reasonable explanations for how Licensee came

---

[3] *See also Muehlen v. Dep't of Transp., Bureau of Driver Licensing*, slip op. (Pa. Cmwlth. No. 64 C.D. 2024, filed June 12, 2025), slip op. at 7, 2025 WL 1662338, and *Stewart v. Dep't of Transp., Bureau of Driver Licensing*, (Pa. Cmwlth. No. 359 C.D. 2022, filed January 27, 2025), slip op. at 2-3, 2025 WL 301841. In each of these cases, like in *Bold II*, the licensees were encountered in their vehicles in the parking lot outside the establishment in which they had been drinking. Note that pursuant to Section 414(a) of this Court's Internal Operating Procedures, unreported opinions of this Court, such as these, may be cited for their persuasive value. 210 Pa. Code § 69.414(a).

to be in her parked vehicle blocks from the bar (such as having walked from the bar to her car, as the Majority contends), those alternatives are immaterial. *See Gammer v. Dep't of Transp., Bureau of Driver Licensing*, 995 A.2d 380, 384 (Pa. Cmwlth. 2010) ("It is immaterial whether alternative reasonable explanations for how the motorist came to be as he was found exist."). Where there exist facts from which two reasonable alternative scenarios can be surmised from circumstantial evidence, it is not within the purview of this Court or the trial court to supplant the judgment of the officer with its own, so long as the officer's interpretation was reasonable. Accordingly, I would hold that the trial court erred in determining that Officer Kincaid lacked reasonable grounds to suspect Licensee was DUI. Certainly, he did not have to "definitively conclude" that Ms. DeJesus was operating or had been operating the vehicle impaired.

The Majority ultimately determines that when an officer finds an adult passed out behind the wheel of a car parked four blocks from a bar the adult says, while exhibiting signs of intoxication, they came from, that it is unreasonable for the officer to believe the adult had operated the car under the influence.

I disagree. I think it is both reasonable to believe she walked to the car and it is also reasonable to believe she drove to the parking space from the bar. To the extent there are "alternative reasonable explanations" for how the licensee came to be how and where they are, it is within the officer's discretion to choose which to believe, so long as it is reasonable. *See Gammer*, 995 A.2d at 384. The Majority's

decision requires officers to give the benefit of the doubt to the licensee which is contrary to both law and precedent.  For these reasons, I would reverse.


_____
MATTHEW S. WOLF, Judge